STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v KURYLOWICZ

1. AUTOMOBILES—INSURANCE—COMPENSATION OF ACCIDENT VICTIMS—LEGISLATIVE POLICIES.

   The policy of the State of Michigan, as found in the statutes regarding automobile liability insurance and compensation for accident victims, is that persons who suffer loss because of automobile accidents shall have a source and a means of recovery.

2. STATUTES—CONSTRUCTION—PURPOSES.

   Statutes are construed by the Court of Appeals with the aim of preventing injustice, of obviating absurd consequences, and of opposing all prejudice to the public interests.

3. AUTOMOBILES—INSURANCE—MISREPRESENTATION BY INSURED—RECOVERY BY THIRD PARTY.

   Misrepresentation regarding a previous suspension of his driver's license by an insured on his application for automobile insurance will not prevent recovery against the insurer by a third party who is injured by the insured.

4. AUTOMOBILES—INSURANCE—RETENTION OF PREMIUMS—GROUNDS FOR CANCELLATION—STATUTES—RESCISSION—ESTOPPEL.

   An automobile liability insurer which retains premium payments from the insured notwithstanding grounds for cancellation reasonably discoverable by the insurer within a statutory 55-day period is estopped to assert those grounds for rescission after that period (MCLA 500.3220; MSA 24.13220).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am Jur 2d, Automobile Insurance §§ 211, 219.

[1, 3] Validity, construction, and effect of statutory or policy provisions which give injured or damaged person right of action against insurer in respect of indemnity or liability insurance voluntarily carried. 106 ALR 516.

[2] 73 Am Jur 2d, Statutes §§ 145, 146.

[3] 7 Am Jur 2d, Automobile Insurance §§ 218–220.

[4] 7 Am Jur 2d, Automobile Insurance §§ 6, 9, 10.

Appeal from Kent, Stuart Hoffius, J. Submitted November 4, 1975, at Grand Rapids. (Docket No. 19677.) Decided March 8, 1976. Leave to appeal denied, 397 Mich —.

Complaint by State Farm Mutual Automobile Insurance Company against Frank Kurylowicz, Robert J. Kurylowicz, and others for a declaratory judgment seeking to determine rights under a policy of automobile insurance. Third-party complaint by Frank Kurylowicz and Robert J. Kurylowicz against the Secretary of State. Judgment for defendants and third-party defendant declaring plaintiff liable under the policy. Plaintiff appeals. Affirmed.

*Cholette, Perkins & Buchanan* (by *Robert A. Benson),* for plaintiff.

*Bergstrom, Slykhouse & Shaw, P. C.,* (by *Michael R. Smolenski),* for defendants Frank Kurylowicz and Robert J. Kurylowicz.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Joseph B. Bilitzke* and *Carl K. Carlsen,* Assistants Attorney General, for defendant Secretary of State.

Before: T. M. BURNS, P. J., and V. J. BRENNAN, and M. F. CAVANAGH, JJ.

V. J. BRENNAN, J. Plaintiff, State Farm Mutual Automobile Insurance Company (hereinafter State Farm), appeals as of right from a judgment entered on January 29, 1974 which refused plaintiff's request that an automobile insurance policy which it had issued to defendants Frank and Robert Kurylowicz be cancelled and held void *ab initio.*

In February or March of 1971 defendant Robert John Kurylowicz made application to State Farm

for insurance coverage on an automobile. In filling out the application form, the agent asked Mr. Kurylowicz a number of questions, one of which was whether or not, at any time during the past five years, had the insured or any member of his household had his license to drive suspended or revoked. Although there was a conflict in the testimony, the trial judge found that Robert Kurylowicz had answered "no" to that question, whereupon the agent so indicated in the appropriate box on the application form. On May 10, 1971, Robert Kurylowicz returned to the office, made a deposit of $65 on the insurance and received a verbal binder from the agent. The agent thereupon completed the application form, showing May 10, 1971 as the date of the application and the effective date of the policy of insurance. It was uncontroverted at trial that Robert Kurylowicz's driver's license had been suspended from September 14 to October 13, 1970.

On May 20, 1971, Robert Kurylowicz was involved in an automobile accident in which one Michael W. Thorn was killed and five other persons injured. Robert Kurylowicz was involved in a second accident on July 19, 1971. On August 23, 1971, State Farm declared a recission of the policy retroactive to May 10, 1971, alleging as grounds that Robert Kurylowicz had misrepresented material facts in his application concerning previous revocation or suspension of his driver's license.

A suit was subsequently commenced by the administrator of the estate of Michael W. Thorn against Robert John Kurylowicz, Frank G. Kurylowicz and others. Thereafter, State Farm brought the instant action for declaratory judgment seeking to determine the rights of the various parties under the policy. A trial was held and the circuit

judge issued a written opinion in which he held that there was insurance coverage at the time of the accident on May 20, 1971. A motion for rehearing was denied and State Farm thereupon filed this appeal. The sole issue presented is whether the misrepresentation by Robert Kurylowicz in his application for automobile insurance will justify a determination that his automobile insurance policy was void *ab initio.*

State Farm relies on the case of *Keys v Pace,* 358 Mich 74; 99 NW2d 547 (1959), for the proposition that an insurer under an automobile insurance policy may avoid liability under the policy if, in procuring the insurance, the insured has misrepresented a fact material to the risk and the falsity of the representation was unknown to the insurer. In that case the insured was one Robert H. Pace, who was found guilty of a traffic violation and was therefore ordered to surrender his driver's license on July 25, 1955. Pace's driver's license was returned on November 27, 1956. On that very day, Pace, representing that he had not had his operator's license revoked, suspended or refused during the last three years, applied for and was issued a policy of automobile insurance. On December 3, 1956, Julia Keys, a passenger in an automobile, was injured when the automobile in which she was riding was struck by an automobile operated by Pace. In the suit which followed, the court entered a judgment of $9,500 against defendant Pace. In the garnishment action which followed, the insurance company, garnishee defendant, sought to avoid liability on the policy, contending that the policy was totally void from its inception because of misrepresentations made by the principal defendant Pace in his application. The circuit court entered judgment against the

insurance company. The Michigan Supreme Court reversed and directed that a judgment of no cause of action be entered. In reaching this decision, the Court was impressed by the palpable dishonesty of Pace and what it considered the "onerous" burden of imposing a duty on insurance companies to investigate the representations of their proposed insureds.

"Rather, is the insurer not entitled to give credence to its insured's honesty until it has actual notice that he is a scoundrel? Moreover, if inquiry is to be demanded, is it enough to stop with the traffic court? Might not the accident suggest physical or psychiatric defects? Should investigations not also be made of the past hospitalizations of the insured? Where will we say this may stop within the existing economic framework? It is doubtful whether one who deliberately sets out to swindle an insurance company can be prevented from doing so by any such requirement, and it is even more doubtful that there is enough of this practice to warrant the placing upon the insurance business a requirement so onerous." 358 Mich at 84; 99 NW2d at 552.

*Keys v Pace* has never been overruled, but it is interesting to note that no Michigan appellate court has seen fit to cite this case since it was released in 1959.

In 1966, the Michigan Legislature saw fit to amend the Michigan Insurance Code of 1956 by the enactment of 1966 PA 342. MCLA 500.3204 *et seq.;* MSA 24.13204 *et seq.* There the Legislature provided, *inter alia,* for limitation of the grounds which an insurance company could use for cancellation of a policy. MCLA 500.3220; MSA 24.13220. Under these provisions, an insurance company could cancel an automobile liability policy only for one or more of some 13 different reasons. Among those reasons was "that the insured failed to dis-

close fully in his application his record of motor vehicle accidents or traffic violations as are material to the insurer's acceptance of the risk". The Michigan Legislature saw fit to amend this section once again by 1970 PA 161, by deleting most of the grounds upon which an insurance company would be able to cancel a policy of automobile liability insurance and by providing that after 55 days from the original issue of the policy the insurer could cancel a policy only if "the named insured or any other operator, either resident of the same household or who customarily operates an automobile insured under the policy has had his operator's license suspended during the policy period and the revocation or suspension has become final". MCLA 500.3220; MSA 24.13220.

The Michigan Legislature in 1965 enacted the Motor Vehicle Accident Claims Act, MCLA 257.1101 *et seq.;* MSA 9.2801 *et seq.,* in order to provide compensation for citizens injured by uninsured tort-feasors who would otherwise have no source of recovery. *Bowser v Jacobs,* 36 Mich App 320; 194 NW2d 110 (1971).

Finally, we note that the Legislature has enacted 1972 PA 294, commonly referred to as the "no-fault act", MCLA 500.3101 *et seq.;* MSA 24.13101 *et seq.* The provisions on compensation therein sought to serve the important social interests of lessening the tragic social and economic consequences that often accompany automobile mishaps. *Shavers v Attorney General,* 65 Mich App 355; 237 NW2d 325 (1975). Of course the case at bar accrued prior to the enactment of the "no-fault act", so our holding in this case cannot be precedent for actions arising after the effective date of no-fault, but the purposes of the Legislature in passing the no-fault act are instructive in

our determination of the policy of the State of Michigan in seeking to provide for recovery for victims of automobile mishaps in the state.

When these statutes are read *in pari materia,* the policy of the State of Michigan regarding automobile liability insurance and compensation for accident victims emerges crystal clear. It is the policy of this state that persons who suffer loss due to the tragedy of automobile accidents in this state shall have a source and a means of recovery. Given this policy, it is questionable whether a policy of automobile liability insurance can ever be held void *ab initio* after injury covered by the policy occurs. Generally, it is held that:

"The liability of the insurer with respect to insurance required by the act becomes absolute whenever injury or damage covered by such policy occurs * * * no statement made by the insured or on his behalf and no violation of the policy provisions may be used to defeat or avoid the policy." 1 Long, The Law of Liability Insurance, § 3.25 pp 3-83–84. See *Detroit Automobile Inter-Insurance Exchange v Ayvazian,* 62 Mich App 94; 233 NW2d 200 (1975).

That issue is not before us in this case, so we need not decide it. We need only decide whether, under the facts of the case at bar, State Farm reasonably relied on the representations of the insured so as to justify a holding that the policy was procured by fraud, thus warranting a judicial determination that the policy was void *ab initio.* This question has not been decided in Michigan since the Legislature has spelled out the policy of this state in the statutes as discussed *supra.* We turn, therefore, to a brief discussion of significant cases from other jurisdictions.

In the case of *State Farm Mutual Automobile*

*Insurance Co v Wall,* 92 NJ Super 92; 222 A2d 282 (1966), the proposed insured gave false answers to questions in the application for insurance regarding his driving record. After an accident had occurred, State Farm brought an action for a rescission *ab initio.* The court observed that although State Farm did order an investigation of the proposed risk by an investigating agency, the agency was not asked to obtain from the public records in New Jersey a copy of the proposed insured's driving record, which incidentally would have cost an additional $1. The New Jersey court held that State Farm had no liability to its insured in this case, but that it was liable to claimants injured in an accident with insured's vehicle, irrespective of absence of certification and regardless of any fraudulent misrepresentations by the insured in his application.

Under similar facts, the Utah Supreme Court in *State Farm Mutual Insurance Co v Wood,* 25 Utah 2d 427; 483 P2d 892 (1971), held that an automobile liability insurer which issued a policy to an applicant who misrepresented his age, driving record and the fact that his driver's license had been revoked, had a duty to make reasonably thorough and prompt investigation of applicant's insurability and could not, without showing adequacy of investigation, obtain rescission of the policy after the applicant was involved in an accident. The court said:

"An insurer cannot neglect its duty to make a reasonable investigation of insurability or postpone that investigation until after it learns of a probable claim and still retain its right to rescind. To permit an insurer to avoid its duty to make a reasonable investigation within a reasonable time would permit it to retain the

premiums and avoid all risk under the policy." 25 Utah 2d at 429; 483 P2d at 893.

Similarly, in the case of *Barrera v State Farm Mutual Automobile Insurance Co,* 71 Cal 2d 659; 79 Cal Rptr 106; 456 P2d 674 (1969), the proposed insured misrepresented his driving record on his application for automobile liability insurance. Again, after an accident occurred injuring a pedestrian State Farm sought to have the policy declared void *ab initio* because of the misrepresentation. The court held:

"We conclude that an automobile liability insurer must undertake a reasonable investigation of the insured's insurability within a reasonable period of time from the acceptance of the application and the issuance cf a policy. This duty directly inures to the benefit of third persons injured by the insured. Such an injured party, who has obtained an unsatisfied judgment against the insured, may properly proceed against the insurer; the insurer cannot then successfully defend upon the ground of its own failure reasonably to investigate the application." 71 Cal 2d at 663; 79 Cal Rptr at 109; 456 P2d at 677.

The court noted that according to testimony in the court below a check on the proposed insured's driving record could have been made at a cost of $.25. Allowing the insurance carrier to obtain rescission *ab initio,* the Court reasons, would not only contravene the state policy of providing monetary protection to persons using the highways who suffered injuries through the negligent use of those highways by others, but it would also allow the insurance carrier to accept premiums without incurring any risk. The Court stated:

" * * * if an automobile liability insurer can perpet-

ually postpone the investigation of insurability and concurrently retain its right to rescind until the injured person secures a judgment against the insured and sues the carrier, then the insurer can accept compensation without running any risk whatsoever. Such a rule would permit an automobile liability insurer to continue to pocket premiums and take no steps at all to probe the verity of the application for the issued policy unless and until the financial interest of the insurer so dictated. Furthermore, under such a rule, the carrier would be permitted to deal with the insured as though he were insured, and thus to lead him to believe that he was in fact insured." 71 Cal 2d at 670; 79 Cal Rptr at 114; 456 P2d at 682.

The state of New York also has a policy opposing rescission *ab initio* of automobile liability insurance policies, and has held that as a matter of public policy, an insurance carrier cannot rescind automobile insurance *ab initio. Allstate Insurance Co v Sullam,* 76 Misc 2d 87, 103; 349 NYS2d 550, 566 (1973), citing *State Farm Mutual Automobile Insurance Co v Carrion,* 41 App Div 2d 708; 341 NYS2d 456 (1973).

We find the reasoning of these cases and the conclusions which they reach to be compelling. In the case at bar, State Farm could have obtained a copy of the insured's driving record for $2. We hold that, in the light of the intervening legislation and the public policy of the State of Michigan which such legislation implies, *Keys v Pace, supra,* is inapplicable to the case at bar.

State Farm argues that the statutes cited by the trial judge and by the defendants are inapplicable, since they relate to cancellations and not rescission *ab initio.* Such a construction would require that we hold, in effect, that although an insurer may not cancel a policy of automobile liability insurance based on fraud subsequent to the pay-

ment of a claim under the policy, it may nevertheless treat the policy as void *ab initio* and avoid liability on the policy altogether. We do not think that the Legislature intended such an absurd consequence. We construe statutes with the aim of preventing injustice, *Lakehead Pipe Line Co, Inc v Dehn,* 340 Mich 25; 64 NW2d 903 (1954), of obviating absurd consequences, *Magreta v Ambassador Steel Co,* 378 Mich 689; 148 NW2d 767 (1967), *reh,* 380 Mich 513; 158 NW2d 473 (1968), and of opposing all prejudice to the public interests. *State Highway Commissioner v Detroit City Controller,* 331 Mich 337; 49 NW2d 318 (1951).

We are not unmindful that this Court held, in the case of *State Farm Mutual Automobile Insurance Co v Allen,* 50 Mich App 71; 212 NW2d 821 (1973), that the statute in question, restricting an insurer's power to cancel a policy of insurance, does *not* limit the Court's policy to declare a policy inoperative because of fraud or forgery. We consider *Allen* inapposite, however, because there the insured himself did not make any misrepresentations but rather his name was forged on the insurance application. Further, it does not appear that the misrepresentation or fraud would have been discoverable by the insurer in the exercise of ordinary diligence.

In the case at bar the trial judge held that the misrepresentation of the insured would not prevent recovery against the insurer by third parties who had been injured by the insured. We agree.

The Michigan Supreme Court has held that the unreasonable delay of a life insurance company in accepting or rejecting an application for insurance, together with a retention of a premium or deposit will amount to an acceptance of the application by implication. *Gorham v Peerless Life Insurance Co,*

368 Mich 335, 341–343; 118 NW2d 306, 309–310 (1962). Similarly, we hold that where an automobile liability insurer retains premiums, notwithstanding grounds for cancellation reasonably discoverable by the insurer within the 55-day statutory period as prescribed by MCLA 500.3220; MSA 24.13220, the insurer will be estopped to assert that ground for rescission thereafter.

The trial judge reached the right result.

Affirmed.