# STATE OF MICHIGAN

# COURT OF APPEALS

ALI BAZZI,

        Plaintiff-Appellee,

and

GENEX PHYSICAL THERAPY, INC., ELITE
CHIROPRACTIC CENTER, PC, and
TRANSMEDIC, LLC,

        Intervening Plaintiffs-Appellees,

v

SENTINEL INSURANCE COMPANY,

        Defendant/Third-Party Plaintiff-
Appellant,

and

CITIZENS INSURANCE COMPANY,

        Defendant-Appellee,

and

HALA BAYDOUN BAZZI and MARIAM
BAZZI,

        Third-Party Defendants-Appellees.

FOR PUBLICATION
June 14, 2016
9:20 a.m.

No. 320518
Wayne Circuit Court
LC No. 13-000659-NF

Before: SAWYER, P.J., and BECKERING and BOONSTRA, JJ.

SAWYER, P.J.

-1-

We are asked in this case to determine whether the so-called "innocent third-party" rule, which this Court established in *State Farm Mut Auto Ins Co v Kurylowicz*,[1] survived our Supreme Court's decision in *Titan Ins Co v Hyten*.[2] We conclude that it did not.

Plaintiff Ali Bazzi ("plaintiff") is seeking PIP benefits for injuries sustained in an automobile accident while driving a vehicle owned by third-party defendant Hala Bazzi (plaintiff's mother). The intervening plaintiffs are healthcare providers who provided services to plaintiff as a result of those injuries and are seeking payment for those services. The vehicle driven by Bazzi was insured under a commercial automobile policy issued by defendant Sentinel Insurance to Mimo Investments, LLC.[3] Sentinel maintains that the policy was fraudulently procured by Hala Bazzi and Mariam Bazzi (plaintiff's sister and resident agent for Mimo Investments) in order to obtain a lower premium due to plaintiff's involvement in a prior accident. Sentinel maintains that the vehicle was actually leased to Hala Bazzi for personal and family use, not for commercial use by Mimo, and, in fact, that Mimo was essentially a shell company that had no assets or employees or was not otherwise engaged in actual business activity. Sentinel also alleges as fraud that it was not disclosed that plaintiff would be a regular driver of the vehicle. In fact, Sentinel successfully pursued a third-party complaint against Hala and Mariam Bazzi seeking to rescind the policy based upon fraud.

Sentinel thereafter moved for summary disposition on plaintiff's claim against Sentinel for PIP benefits, as well as the intervening plaintiffs' claims, based upon the policy being rescinded based upon fraud. The trial court denied the motion, concluding that plaintiff had a claim based upon the innocent third-party rule.[4] Sentinel sought leave to appeal to this Court, which was denied by order entered on May 21, 2014. Sentinel then sought leave to appeal to the Supreme Court which, in lieu of granting leave, remanded the matter to this Court for consideration as on leave granted.[5] We now reverse the decision of the trial court and remand the matter for further proceedings consistent with this opinion.

The standard of review to be applied here was set forth as follows in *Titan*:[6]

> This Court reviews de novo a trial court's decision on a motion for summary disposition. *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 486 Mich 311, 317; 783 NW2d 695 (2010). In addition, the proper interpretation

---

[1] 67 Mich App 568; 242 NW2d 530 (1976).

[2] 491 Mich 547; 817 NW2d 562 (2012).

[3] Defendant Citizens Insurance Company's involvement and potential liability in this case is as the servicing insurer under Michigan's assigned claims plan. See MCL 500.3172(1).

[4] At this point, we assume, without deciding, for purposes of this appeal that plaintiff is, in fact, innocent of the fraud.

[5] *Bazzi v Sentinel Ins Co*, 497 Mich 886 (2014).

[6] 491 Mich at 553.

-2-

of a statute is a question of law that this Court reviews de novo. *Eggleston v Bio-Med Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003). The proper interpretation of a contract is also a question of law that this Court reviews de novo. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

Resolution of this case begins and ultimately ends with our Supreme Court's decision in *Titan*. Although *Titan* did not involve a no-fault insurance claim for PIP benefits, we nonetheless are convinced that *Titan* compels the conclusion that there is no innocent third-party rule as to a claim for those benefits. That is, if an insurer is entitled to rescind a no-fault insurance policy based upon a claim of fraud, it is not obligated to pay benefits under that policy even for PIP benefits to a third party innocent of the fraud.

In *Titan*, the insurer sought a declaratory judgment on the basis that, because of fraud in the application, it had no duty to indemnify its insureds in a claim brought by third parties injured in an automobile accident with Titan's insureds.[7] The injured parties, and their insurer, maintained that Titan could not avoid liability to the innocent third parties based upon easily ascertainable fraud. While this Court agreed, based upon our earlier decision in *Kurylowicz*, the Supreme Court disagreed and overruled *Kurylowicz* and its progeny.[8]

Plaintiff and defendant Citizens argue that the decision in *Titan* does not apply to this case for two reasons: *Titan* did not involve mandatory PIP benefits and it only considered the "easily ascertainable" rule and not the "innocent third-party" rule. These are the essential arguments in this case because, if *Titan* does not apply here, then there is binding precedent of this Court which applies the innocent third-party rule to no-fault PIP cases.[9] On the other hand, if *Titan* does apply, then we are certainly obligated to follow a recent Supreme Court decision over an older decision of this Court. But, after careful analysis, we are not persuaded that either of these arguments provides a basis for distinguishing *Titan* and, therefore, we conclude that Sentinel is not obligated to pay no-fault benefits to plaintiff if it establishes that the policy was procured by fraud.

First, we consider whether there is, in fact, a distinction between the "easily ascertainable" rule discussed in *Titan* and the "innocent third-party" rule advanced in this case. We conclude that they are one and the same.

---

[7] *Titan*, 491 Mich at 551-552. Titan acknowledged that it was obligated to indemnify its insureds for the minimum liability coverage of $20,000 per person/$40,000 per occurrence required under the financial responsibility act, MCL 257.501 *et seq*. *Titan*, 491 Mich at 552 n 2.

[8] 491 Mich at 550-551.

[9] See, e.g., *Lake States Ins Co v Wilson*, 231 Mich App 327; 586 NW2d 143 (1998).

While *Titan* does consistently refer to the "easily ascertainable" rule of *Kurylowicz*, it and the so-called "innocent third-party" rule are not two different rules. As stated by *Titan* itself, the issue in that case was as follows:[10]

> The principal question presented in this case is whether an insurer may avail itself of traditional legal and equitable remedies to avoid liability under an insurance policy on the ground of fraud in the application for insurance, when the fraud was easily ascertainable and the claimant is a third party.

Thus, the focus of *Titan* is not merely on how ascertainable the fraud is; it is also relevant that we are dealing with a third-party claimant. Indeed, the gist of *Kurylowicz* is that both conditions must apply before the insurer is prevented from raising a fraud defense. This point was recognized by the Supreme Court in *Titan* when it observed that "when it is the insured who seeks benefits under an insurance policy procured through fraud, even an easily ascertainable fraud will not preclude an insurer from availing itself of traditional legal and equitable remedies to avoid liability."[11]

In sum, *Titan* recognized that the rule in *Kurylowicz* only applied if the fraud was easily ascertainable and involved an innocent third party. Moreover, it would make no sense to conclude that an insurer has no liability if the fraud is easily ascertainable, but would retain liability if the fraud was not easily ascertainable.[12] Accordingly, "easily ascertainable" and "innocent third-party" are merely two different labels for the same rule and we cannot dismiss the application of *Titan* merely by applying the "innocent third-party" label to this case and then pointing out that *Titan* dealt with the "easily ascertainable" rule. That is, in rejecting the "easily ascertainable" rule, the Supreme Court of necessity also rejected the "innocent third-party" rule because they are, in fact, the same rule.

Furthermore, even if the decision in *Kurylowicz* has evolved into two separate rules, the "easily ascertainable" rule and the "innocent third-party" rule, it is irrelevant. Both such rules have their roots in the *Kurylowicz* decision. And *Titan* clearly overrules *Kurylowicz* "and its progeny . . . ."[13] Moreover, this point is further supported by the fact that one of the cases explicitly overruled by *Titan* was this Court's decision in *Ohio Farmers Ins Co v Mich Mut Ins Co*.[14] While *Titan* did state that *Ohio Farmers* was overruled to the extent that it held "that an insurer is estopped from denying coverage on the basis of fraud when it could have easily

---

[10] 491 Mich at 560.

[11] *Titan*, 491 Mich at 564.

[12] Indeed, applying such a conclusion to this case would lead to the rather bizzare result that Sentinel could deny liability if it can demonstrate that the fraud committed by the Bazzis was easily ascertainable, but not if the fraud was more difficult to establish.

[13] *Titan*, 491 Mich at 551, 573.

[14] 179 Mich App 355; 445 NW2d 228 (1989).

ascertained the fraud,"[15] the discussion in *Ohio Farmers* regarding its reliance on *Kurylowicz* was on the claimant being an innocent third party.[16] In fact, *Titan* cites *Ohio Farmers* for the proposition that "it is contended that the 'easily ascertainable' rule is required for the protection of third parties."[17] Yet, the quotation from *Ohio Farmers* that *Titan* utilizes makes reference not to the fraud being easily ascertainable, but to an insurer being estopped from rescinding a policy where an innocent third party has been injured.[18] This then brings us back to our earlier point: that the "easily ascertainable" rule and the "innocent third-party" rule are one and the same. An overruling of *Ohio Farmers* of necessity overrules the innocent third-party rule.

We now turn to the other question posed in this case, whether the holding in *Titan* extends to mandatory no-fault benefits. We conclude that it does. *Titan* did, in fact, involve optional benefits not mandated by statute. But this was not the basis of the Court's decision. And it makes the rather unremarkable observation that, where insurance benefits are mandated by statute, coverage is governed by that statute.[19] It is also true that "because insurance policies are contracts, common-law defenses may be involved to avoid enforcement of an insurance policy, *unless those defenses are prohibited by statute*."[20] The Court ultimately holds "that an insurer is not precluded from availing itself of traditional legal and equitable remedies to avoid liability under an insurance policy on the ground of fraud in the application for insurance, even when the fraud was easily ascertainable and the claimant is a third party."[21] And it does so without qualification regarding whether those benefits are mandated by statute. Thus, if there is a valid policy in force, the statute controls the mandated coverages. But what coverages are required by law are simply irrelevant where the insurer is entitled to declare the policy void ab initio. The situation would be akin to where the automobile owner had never obtained an insurance policy in the first place; they would have been obligated by law to obtain such coverage, but failed to do so.

Thus, the question is not whether PIP benefits are mandated by statute, but whether that statute prohibits the insurer from availing itself of the defense of fraud. And none of the parties identify a provision in the no-fault act itself where the Legislature statutorily restricts the use of the defense of fraud with respect to PIP benefits. That is, the one argument under *Titan* that would carry the day for the appellees simply does not exist. And the Legislature was certainly

---

[15] *Titan*, 491 Mich at 551 n 1.

[16] 179 Mich App at 363-365.

[17] *Titan*, 491 Mich at 568.

[18] 491 Mich at 568 n 11.

[19] *Titan*, 491 Mich at 554.

[20] *Id.* (emphasis added).

[21] *Id.* at 571.

aware that it could do so as it had already done so with respect to the financial responsibility act.[22]

This leads us to a related argument raised by Citizens: that *Titan* is inapplicable because it dealt with the financial responsibility act, which is not at issue here. Citizens misconstrues the discussion in *Titan* regarding MCL 257.520. While MCL 257.520 is somewhat central to the Court's analysis in *Titan*, the Court carefully analyzed MCL 257.520 to dismiss prior decisions that had concluded that that applies to all liability insurance policies and, therefore, the Court concluded that limitation on the fraud defense contained in MCL 257.520(f)(1) does not apply to all automobile insurance policies. *Titan*[23] analyzes this point as follows:

> Several appellate decisions of this state have suggested that MCL 257.520 applies to *all* liability insurance policies. For example, in *State Farm Mut Auto Ins Co v Sivey*, 404 Mich 51, 57; 272 NW2d 555 (1978), this Court indicated that MCL 257.520(b)(2) applies to "*all* policies of liability insurance[.]" (Emphasis added.) In addition, in *Farmers Ins Exch v Anderson*, 206 Mich App 214, 220; 520 NW2d 686 (1994), the Court of Appeals indicated that "when an accident occurs in this state, the scope of liability coverage is determined by the financial responsibility act." See also *League Gen Ins Co v Budget Rent-A-Car of Detroit*, 172 Mich App 802, 805; 432 NW2d 751 (1988) ("When an accident occurs in this state, the scope of the liability coverage required in an insurance policy is determined by Michigan's financial responsibility act[.]"). However, none of these decisions undertook a close analysis of this issue.

> We have closely reviewed MCL 257.520(f)(1), and we believe that the statute does not *in every case* limit the ability of an automobile insurer to avoid liability on the ground of fraud; its reference to "motor vehicle liability policy" is not all encompassing. Rather, as used in MCL 257.520(f)(1), "motor vehicle liability policy" refers only to an "owner's or an operator's policy of liability insurance, certified as provided in [MCL 257.518] or [MCL 257.519] as proof of financial responsibility . . . ." MCL 257.520(a). Thus, absent this certification, MCL 257.520(f)(1) has no relevant application. Further, MCL 257.520(f)(1) refers only to "the insurance *required by this chapter*," (emphasis added), and the only insurance required by chapter V of the Michigan Vehicle Code is insurance "certified as provided in [MCL 257.518] or [MCL 257.519] as proof of financial responsibility . . . ." MCL 257.520(a). Therefore, as we stated in *Burch v Wargo*, 378 Mich 200, 204; 144 NW2d 342 (1966), MCL 257.520 "applies only when 'proof of financial responsibility for the future' . . . is statutorily required . . . ." See also MCL 257.522 ("This chapter shall not be held to apply to or affect policies of automobile insurance against liability which may now or hereafter be required by any other law of this state . . . ."); and *State Farm Mut Auto Ins Co v*

---

[22] See MCL 257.520(f)(1).

[23] 491 Mich at 558-560.

*Ruuska*, 412 Mich 321, 336 n 7; 314 NW2d 184 (1982) ("[I]n discussing the requisites for an automobile liability policy issued as proof of future financial responsibility, the Legislature [in MCL 257.520(b)], after requiring an owner's policy to designate by explicit description or appropriate reference all covered motor vehicles, limited the liability coverage to only those automobiles listed in the policy by speaking in terms of the use of 'such' vehicle(s)."). For these reasons, we now clarify that MCL 257.520(f)(1) does not apply to a motor vehicle liability insurance policy unless it has been certified under MCL 257.518 or MCL 257.519 and, to the extent that *Sivey, Anderson*, and *League* suggest otherwise, they are overruled.

This is an important point. While it specifically establishes that MCL 257.520(f)(1) only restricts the fraud defense as to coverage required under Chapter V of the vehicle code,[24] it also explains why it is not relevant whether a coverage is mandatory or not. Rather, it is only relevant whether the Legislature has restricted the availability of the fraud defense with respect to a particular coverage.

Therefore, it is necessary to determine exactly to what coverage the restrictions of MCL 257.520(f)(1) apply. First, it only restricts the application of the fraud defense to coverage required in Chapter V. As discussed in the above quotation from *Titan*, the only insurance coverage required in Chapter V is the proof of financial responsibility under MCL 257.518 and MCL 257.519. And that proof of financial responsibility is only required to prevent the suspension of the license, registration and nonresident driving privileges of a person against whom there is an unsatisfied judgment as defined in Chapter V.[25] Thus, unless the insured in this case had an outstanding, unsatisfied judgment, and there is no indication that this is the case, then the provisions of MCL 257.520 would simply not apply. This is in contrast to MCL 500.3101, which requires that the owner or registrant of a motor vehicle driven on a highway carry certain insurance coverages, including residual liability insurance. And under MCL 500.3131 and MCL 500.3009, the minimum limits are similar to that required under the financial responsibility act. But, unlike the provisions of the financial responsibility act, none of those statutes restrict the availability of the fraud defense.[26]

Citizens argues that MCL 257.520(f)(1) "only provides authority for policy cancellation or annulment as to the 'insured'" and, therefore, the "statute has absolutely no application to the claim of Ali Bazzi in the instant action, and makes the *Titan v Hyten* opinion, again, completely distinguishable." While Citizens is correct that MCL 257.520 is inapplicable to this case, it misses the point of the discussion in *Titan* of the statute. It is not, as Citizens' argument would suggest, that MCL 257.520 must apply in order for the insurer to deny coverage. Rather, it

---

[24] MCL 257.501 through MCL 257.532.

[25] MCL 257.512 and MCL 257.513.

[26] This also rebuts the suggestion that the insurer would be liable for $20,000 per person/$40,000 per occurrence in PIP benefits. The provisions of the financial responsibility act are simply inapplicable to no-fault benefits or other coverages required under the no-fault act.

underscores that MCL 257(f)(1), or a similar statute, *must* apply in order for the insurer to be precluded from denying coverage based upon fraud.

Next, Citizens argues that public policy requires that we keep the "innocent third-party" rule. But this argument ignores the Supreme Court's criticism of this Court's reliance on "public policy" in *Kurylowicz* in justifying the "easily ascertainable" rule. In *Titan*,[27] the Court had this to say on the topic:

> First, *Kurylowicz* justified the "easily ascertainable" rule on the basis of its understanding of the "public policy" of Michigan. In light of the Legislature's then recent passage of the no-fault act, MCL 500.3101 *et seq., Kurylowicz* reasoned that
>
> "the policy of the State of Michigan regarding automobile liability insurance and compensation for accident victims emerges crystal clear. It is the policy of this state that persons who suffer loss due to the tragedy of automobile accidents in this state shall have a source and a means of recovery. Given this policy, it is questionable whether a policy of automobile liability insurance can ever be held void *ab initio* after injury covered by the policy occurs." [*Kurylowicz*, 67 Mich App at 574.]
>
> This "public policy" rationale does not compel the adoption of the "easily ascertainable" rule. In reaching its conclusion, *Kurylowicz* effectively replaced the actual provisions of the no-fault act with a generalized summation of the act's "policy." Where, for example, in *Kurylowicz's* statement of public policy is there any recognition of the Legislature's explicit mandate that, with respect to insurance required by the act, "no fraud, misrepresentation, . . . or other act of the insured in obtaining or retaining such policy . . . shall constitute a defense" to the payment of benefits? MCL 257.520(f)(1). We believe that the policy of the no-fault act is better understood in terms of its actual provisions than in terms of a judicial effort to identify some overarching public policy and effectively subordinate the specific details, procedures, and requirements of the act to that public policy. In other words, it is the policy of this state that all the provisions of the no-fault act be respected, and *Kurylowicz's* efforts to elevate *some* of its provisions and *some* of its goals above other provisions and other goals was simply a means of disregarding the stated intentions of the Legislature. The no-fault act, as with most legislative enactments of its breadth, was the product of compromise, negotiation, and give-and-take bargaining, and to allow a court of this state to undo those processes by identifying an all-purpose public policy that supposedly summarizes the act and into which every provision must be subsumed, is to allow the court to act beyond its authority by exercising what is tantamount to legislative power. Third-party victims of automobile accidents have a variety of means of recourse under the no-fault act, and it is to those means that such

---

[27] 491 Mich at 564-566.

persons must look, not to a judicial articulation of policy that has no specific foundation in the act itself and was designed to modify and supplant the details of what was actually enacted into law by the Legislature.

The policy concerns raised by Citizens may well have merit. But it is for the Legislature, and not by this Court, to determine whether there is merit to those concerns and, if so, what is the appropriate remedy. While the Legislature might conclude that the appropriate response is to create an innocent third-party rule, it may choose to address the issue differently. While we can envision any number of policy issues, as well as solutions to those issues, we are judges, not legislators. It is for the Legislature, not this Court, to consider these issues and determine what, if any, response represents the best public policy. We decline the invitation to legislate into existence an innocent third-party rule that, thus far, the Legislature has chosen not to adopt.

For these reasons, we conclude that the trial court erred in denying summary disposition to Sentinel based upon the trial court's erroneous conclusion that the so-called "innocent third-party" rule remained viable after the Supreme Court's decision in *Titan*. However, we must decide the appropriate disposition of this matter. Sentinel argues that it is entitled to have summary disposition entered in its favor because a default judgment was entered against Hala and Mariam Bazzi which rescinded the insurance policy. Citizens argues that that default judgment only operates as a determination against those two parties and not against it or Ali Bazzi. It does not appear that the trial court ultimately resolved this question; therefore, we conclude that the trial court should first address this question on remand.

Accordingly, we remand the matter to the trial court. On remand, there are two questions before the trial court: first, whether the default judgment against Hala and Mariam Bazzi conclusively establishes fraud, and therefore provides a basis for Sentinel to rescind the policy as to all parties, or whether the remaining parties are entitled to litigate the issue of fraud and, second, whether there is a genuine issue of material fact regarding the fraud issue. If the trial court determines either of those questions in favor of Sentinel, it shall enter summary disposition in favor of Sentinel. If the trial court rules against Sentinel on both of those questions, then it shall deny summary disposition. [28]

---

[28] We acknowledge that, based upon a statement made by the trial court at the motion hearing, it seems likely that the trial court will rule in Sentinel's favor regarding whether there is a genuine issue of material fact on the issue of fraud. Specifically, the trial court stated as follows:

> So if the inquiry ended right there you would say that, *I've already made the determination that Hala Bazzi was fraud*, so you would say, you would agree, *we would all agree that the contract is rescinded*, you would say rescinded with a period right there. [Emphasis added.]

It can certainly be argued that the trial court has already resolved this point and merely went on to hold that the policy cannot be rescinded as to Ali Bazzi solely because of the innocent third-party rule. Nonetheless, we are not quite prepared to determine that the trial court did, in fact, definitively resolve the issue and, therefore, believe that a remand is nevertheless necessary.

In sum, regardless whether there is one rule or two, and whether we consider a case involving liability coverage or PIP benefits, it all leads back to *Kurylowicz,* and the Supreme Court in *Titan* overruled *Kurylowicz* because *Kurylowicz* ignored the Supreme Court's decision in *Keys v Pace*,[29] which had itself involved arguably easily ascertainable fraud and an innocent third party.[30] Accordingly, we conclude that: (1) there is no distinction between an "easily ascertainable rule" and an "innocent third-party rule," (2) the Supreme Court in *Titan* clearly held that fraud is an available defense to an insurance contract except to the extent that the Legislature has restricted that defense by statute, (3) the Legislature has not done so with respect to PIP benefits under the no-fault act, and, therefore (4) the judicially created innocent third-party rule has not survived the Supreme Court's decision in *Titan*. Therefore, if an insurer is able to establish that a no-fault policy was obtained through fraud, it is entitled to declare the policy void ab initio and rescind it, including denying the payment of benefits to innocent third-parties.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Defendant Sentinel may tax costs.

/s/ David H. Sawyer

---

[29] 358 Mich 74; 99 NW2d 547 (1959).

[30] See *Keys*, 358 Mich at 84.

-10-