# STATE OF MICHIGAN

# COURT OF APPEALS

---

MEEMIC INSURANCE COMPANY,

       Plaintiff/Counter-Defendant-
       Appellee,

v

LOUISE M. FORTSON and RICHARD A.
FORTSON, individually and as conservator for
JUSTIN FORTSON,

       Defendant/Counter-Plaintiff-
       Appellant.

FOR PUBLICATION
May 29 2018
9:05 a.m.

No. 337728
Berrien Circuit Court
LC No. 2014-000260-CK

---

Before: MARKEY, P.J., and M. J. KELLY and CAMERON, JJ.

M. J. KELLY, J.

Defendants/Counter-Plaintiffs, Louise Fortson and Richard Fortson, individually and as conservator for their son, Justin Fortson, appeal as of right the trial court's order granting plaintiff, Meemic Insurance Company's, motion for summary disposition under MCR 2.116(C)(10) and denying the Forton's motion for summary disposition under MCR 2.116(I)(2). For the reasons stated in this opinion, we reverse.

## I. BASIC FACTS

This case arises out of a motor-vehicle incident that occurred in September 2009. On that day, Richard and Louise's 19-year-old son, Justin, was riding on the hood of a vehicle when the driver suddenly accelerated and turned. The motion flung Justin from the vehicle, and he struck his head. Justin suffered extensive injuries, including a fractured skull, a traumatic brain injury, and shoulder bruising. He was initially hospitalized, but eventually returned to his parents' home. According to Louise, Justin's brain injury continued to manifest itself after he returned home.

Justin received benefits under his parents' no-fault policy with Meemic. Relevant to this appeal, Louise and Richard provided attendant care to Justin. The record reflects that from 2009 until 2015, Louise submitted attendant care services payment requests to Meemic. On each request, Louise simply noted "24" on each day of the calendar, indicating that she and Richard had provided Justin with constant daily supervision. Meemic routinely paid these benefits, and Meredith Valko, a claims representative employed by Meemic, testified that these payment

requests were sufficient because she knew that Justin had a serious traumatic brain injury with significant residual effects requiring "24/7" supervision.

Around 2014, Meemic initiated an investigation into Louise and Richard's supervision of Justin and discovered that they had not provided him with daily direct supervision. Indeed, the investigation showed that Justin had been periodically jailed for traffic and drug offenses and had spent time at an inpatient substance-abuse rehabilitation facility. Additionally, on social media, Justin had referenced spending time with his girlfriend and smoking marijuana. Based on its investigation, Meemic concluded that the Louise and Richard had fraudulently represented the attendant-care services they claimed to have provided. Meemic terminated Justin's no-fault benefits and filed suit against Louise and Richard, alleging that they had fraudulently obtained payment for attendant care services that they had not provided. Louise and Richard filed a counter-complaint, arguing that Meemic breached the insurance contract by terminating Justin's benefits and refusing to pay for attendant-care services. The parties filed cross-motions for summary disposition. Relying on this Court's decision in *Bazzi v Sentinel Ins Co*, 315 Mich App 763; 891 NW2d 13 (2016), lv gtd 500 Mich 990 (2017), the trial court granted summary disposition in Meemic's favor.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Louise and Richard argue that the trial court erred by granting summary disposition in Meemic's favor. We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009).

### B. ANALYSIS

#### 1. FRAUD

Louise and Richard first argue that the trial court erred by finding that there was no genuine question of material fact with regard to whether they committed fraud. We disagree.

Generally, whether an insured has committed fraud is a question of fact for a jury to determine. See generally *Shelton v Auto-Owners Ins Co*, 318 Mich App 648, 658-660; 899 NW2d 744 (2017). However, under some circumstances, a trial court may decide as a matter of law that an individual committed fraud. See *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 425-426; 864 NW2d 609 (2014). In order to establish that an individual committed fraud, the insurer must establish (1) that the individual made a material misrepresentation, (2) that the representation was false, (3) that when the individual made the representation he or she knew it was false or made it with reckless disregard as to whether it was true or false, (4) that the misrepresentation was made with the intention that the insurer would act upon it, and (5) that the insurer acted on the misrepresentation to its detriment. *Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012). Here, Louise and Richard admit that they were aware that Justin was incarcerated and that he spent time at an inpatient drug rehabilitation facility. Despite the fact that he was not being cared for by Louise and Richard at those times, Louise submitted payment requests to Meemic, stating that they had provided constant attendant care to Justin. That

constituted a material misrepresentation. In addition, the payment requests were submitted with the intention that Meemic would rely on them and remit payment to Louise and Richard for constant attendant care services, despite the fact that Louise and Richard knew that they were not providing constant physical care for their son. Further, although Louise and Richard provided other services to Justin while he was incarcerated or at inpatient rehabilitation, such as paying his car loan or lease and contacting his lawyers, those general tasks are not properly compensable as attendant care services. See *Douglas v Allstate Ins Co*, 492 Mich 241, 259-260, 262-263; 821 NW2d 472 (2012) (stating that allowable attendant-care services must be for an injured person's care, recovery or rehabilitation); see also MCL 500.3107(a). Moreover, even if they were compensable, it cannot be seriously argued that Louise and Richard provided those services to their son on a "24/7" basis, as was claimed on the payment request form. As a result, the trial court did not err by finding that Louise and Richard had committed fraud in connection with their request for payment for attendant care services.

## 2. APPLICABILITY OF *BAZZI*

Louise and Richard next argue that the trial court erred by determining that Justin's argument—i.e., that Meemic could not deny him coverage based on fraud committed by other individuals—was, essentially, barred by *Bazzi*. In *Bazzi*, this Court concluded that the "innocent third party rule," also known as the "easily ascertainable rule," from *State Farm Mut Auto Ins Co v Kurylowicz*, 67 Mich App 568; 242 NW2d 530 (1976), was abolished by our Supreme Court's decision in *Titan*. *Bazzi*, 315 Mich App at 767-768, 771. Under the innocent-third-party rule, an insurer could not use fraud as a defense to avoid paying no-fault benefits if (1) fraud in the procurement of the policy was easily ascertainable and (2) an innocent third-party claimant was involved. *Id*. at 771-772; see also *Titan*, 491 Mich at 563-564. Here, because there are no allegations or evidence that Justin participated in or even benefited from his parents' fraud, he is properly considered an innocent third party, which implicates the holdings in *Bazzi* and *Titan*.

Nevertheless, *Bazzi* and *Titan* addressed fraud in the *procurement* of an insurance policy, not fraud arising after the policy was issued. *Titan*, 491 Mich at 571 (stating "that an insurer is not precluded from availing itself of traditional legal and equitable remedies to avoid liability under an insurance policy on the ground of fraud in the application for insurance, even when the fraud was easily ascertainable and the claimant is a third party"); *Bazzi*, 315 Mich App at 781-782 (holding that "if an insurer is able to establish that a no-fault policy was obtained through fraud, it is entitled to declare the policy void *ab initio* and rescind it, including denying the payment of PIP benefits to innocent third parties"). Here, because the fraud in this case was not fraud in the procurement of the policy and instead arose after the policy was issued, neither *Titan* nor *Bazzi* is dispositive.

This is because there is a meaningful distinction between fraud in the procurement of a no-fault policy and fraud arising *after* a claim was made under a properly procured policy. For instance, when a policy is rescinded on the basis of fraud in the procurement of the policy, it is as if no valid policy ever existed. As this Court explained in *Bazzi*, mandating no-fault benefits when an insurer can declare a policy void *ab initio* on the basis of fraud in the procurement would be akin to requiring the insurer to provide benefits in a case where the automobile owner had never obtained an insurance policy in the first place. *Id*. at 774. Thus, fraud in the procurement essentially taints the entire policy and all claims submitted under it. In contrast, "if

-3-

there is a valid policy in force, the statute controls the mandated coverages." *Id*. Here, when Justin submitted his claim there *was* a valid policy in place; there were no allegations of fraud in the application tainting the validity of the policy. Therefore, under the no-fault act Justin was required to seek no-fault benefits from his parents' no-fault policy. See MCL 500.3114(1). The mere fact that fraud arose in connection with attendant-care services forms submitted *after* Justin made his claim simply has no bearing as to whether there was a valid policy in effect at the time he made his claim. Accordingly, we conclude that the trial court erred by finding *Bazzi* dispositive.[1]

---

[1] It is worth noting that the remedy sought by Meemic is to void or rescind the policy on the basis of fraud. Generally, "[i]n order to warrant recision [sic], there must be a *material* breach affecting a substantial or essential part of the contract." *Holtzlander v Brownell*, 182 Mich App 716, 721; 453 NW2d 295 (1990) (emphasis added).

> To rescind a contract is not merely to terminate it, but to abrogate and undo it from the beginning; that is, not merely to release the parties from further obligation to each other in respect to the subject of the contract, but to annul the contract and restore the parties to the relative positions which they would have occupied if no such contract had ever been made. Rescission necessarily involves a repudiation of the contract and a refusal of the moving party to be further bound by it. But this by itself would constitute no more than a breach of the contract or a refusal of performance, while the idea of rescission involves the additional and distinguishing element of a restoration of the *status quo*. [*Lash v Allstate Ins Co*, 210 Mich App 98, 102; 532 NW2d 869 (1995) (quotation marks and citation omitted).]

"[A] material misrepresentation *made in an application for no-fault insurance* entitles the insurer to rescind the policy." *Id*. (emphasis added). This is because the policy would not have been issued had the material misrepresentation not been made. *Id*. at 103-104.

Here, regardless of Louise and Richard's fraudulent attendant care payment requests, the policy still would have been issued. Therefore, there are no grounds for *automatic* rescission of the policy on the basis of fraud arising after the policy was issued, i.e., fraud that does not affect whether the policy would have been issued in the first place. Instead, at a minimum, Meemic must establish Louise and Richard's misrepresentation affected "a substantial or essential part of the contract." *Holtzlander*, 182 Mich App at 721. And, because rescission is generally viewed as an equitable remedy, *Madugula v Taub*, 496 Mich 685, 712; 853 NW2d 75 (2014), it should not be routinely granted if it would achieve an inequitable result. We recognize that in *Bahri*, this Court held that when an insured claimant makes a fraudulent claim for replacement services, an insurer may use a fraud-exclusion clause to void the entire contract despite the fact that the fraud arose after the policy was procured. *Bahri*, 308 Mich App at 424-426. However, in this case, equity appears to lean in favor of protecting the innocent third party who was statutorily mandated to seek coverage under a validly procured policy and was, unlike the claimant in *Bahri*, wholly uninvolved in the fraud committed *after* the policy was procured.

### 3.  VALIDITY OF FRAUD-EXCLUSION CLAUSE

We next address whether the fraud-exclusion clause—as applied to Justin's claim—is a valid contract provision.  MCL 500.3114(1) provides that a person sustaining an accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle must first look to his or her own no-fault policy, to his or her spouse's policy, or to a no-fault policy issued to a relative with whom he or she is domiciled.  Therefore, if Justin were not an "insured person" as defined by the policy,[2] he would be statutorily entitled to benefits under his parents' no-fault policy by virtue of the fact that he is a relative of his parents and was domiciled with them.  In other words, if the policy did not define a resident relative as an "insured person," then Meemic would be required *by statute* to pay Justin benefits and would be unable to terminate his coverage because of fraud committed by a policyholder with regard to his claim.  See *Shelton*, 318 Mich App at 653-654 (stating that when a claimant's no-fault benefits are governed solely by statute an insurer cannot use a fraud-exclusion clause to bar the claimant's claim).

Under Meemic's logic, by duplicating statutory benefits in a no-fault policy, an insurer can avoid paying no-fault benefits to an injured claimant if someone other than the claimant commits fraud and triggers a fraud-exclusion clause that allows the policy to be voided.  We do not agree that the statutory provisions can be so easily avoided.  "An insurer who elects to provide automobile insurance is liable to pay no-fault benefits subject to the provisions of the [no-fault] act." *Lewis v Farmers Ins Exch*, 315 Mich App 202, 209; 888 NW2d 916 (2016) (quotation marks and citation omitted; brackets in original).  Contractual provisions in an insurance policy that conflict with statutes are invalid.  *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 261; 819 NW2d 68 (2012).  Because MCL 500.3114(1) mandates coverage for a resident relative domiciled with a policyholder, the fraud-exclusion provision, as applied to Justin's claim, is invalid because it conflicts with Justin's statutory right to receive benefits under MCL 500.3114(1).  And, as explained above, his statutory right to receive benefits under the no-fault act was triggered because his parents had a validly procured no-fault policy in place at the time of the motor-vehicle incident.  See *Bazzi*, 315 Mich App at 774.

### 4.  CONTRACT INTERPRETATION

Finally, even if the fraud-exclusion clause were valid, Louise and Richard's fraud is insufficient to trigger it because, at the time they committed fraud, they were no longer "insured persons" under the policy.  The fraud-exclusion clause in the no-fault policy provides:

> This entire Policy is void if any **insured person** has intentionally concealed or misrepresented any material fact or circumstance relating to:
>
> A. This insurance;

---

[2] As explained below, Justin is an "insured person" as that term is defined in Louise and Richard's no-fault policy with Meemic.

B. The Application for it;

C. Or any claim made under it.

The policy defines the term "insured person" as a named insured or the "resident relative" of a named insured. Because Louise and Richard were named insureds under the policy, they are "insured persons," as defined by the policy *so long as that policy remains in effect*.

The policy, however, was cancelled by Meemic. Specifically, on June 14, 2010, Meemic sent a notice of cancellation to Louise and Richard. The notice stated that as of July 29, 2010 at 12:01 a.m., the policy would no longer be in effect. Generally, once a contract of insurance is cancelled, neither the insured nor the insurer retain any rights or obligations pursuant to the cancelled agreement. See 2 Couch, Insurance (3d), § 30:22, pp 49-50 ("Cancellation of a policy at a time and in the manner specified therein cuts off all rights of the insured and bars recovery on the policy for any subsequent accident. By definition, there can be no breach of a contract with respect to transactions arising after the contract of insurance has been effectively cancelled."). See also *Titan*, 491 Mich at 567 ("When a policy is cancelled, it is terminated as of the cancellation date and is effective up to such date[.]") (quotation marks and citation omitted; brackets in original). Accordingly, once the policy was cancelled on July 29, 2010, Louise and Richard were no longer named insureds under the policy, which means that they were no longer "insured persons" as defined in the policy. Further—and this is key—because the fraud was committed *after* the cancellation of the policy, when they were no longer insured persons, their actions were irrelevant for purposes of triggering the fraud-exclusion clause.

The cancellation of the policy did not have any effect on Justin's claim because his claim was made before the policy was cancelled. Automobile no-fault insurance policies are "occurrence" policies as opposed to "claims made" or "discovery" policies. *Stine v Continental Casualty Co*, 419 Mich 89, 98; 349 NW2d 127 (1984). Under an occurrence policy, coverage "is provided no matter when the claim is made, subject, of course, to contractual and statutory notice and limitations of actions provisions, providing the act complained of occurred during the policy period." *Id*. Moreover, the policy in this case contains a cancellation clause, which expressly limits the effect of cancellation. The policy states, "Cancellation will not affect any *claim* that originated prior to the date of cancellation." (Emphasis added). There are no other limitations on the effect of cancellation on the rights and obligations of the parties.

When interpreting a contract, such as an insurance policy, the primary goal "is to honor the intent of the parties." *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 444; 761 NW2d 846 (2008). When a contract is unambiguous, it must be enforced according to its terms, and this Court must resist "the temptation to rewrite the plain and unambiguous meaning of the policy under the guise of interpretation." *Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 207; 476 NW2d 392 (1991). Because, by its unambiguous terms, only a claim predating the cancellation of a policy survives the cancellation of the policy, we must determine what constitutes a claim. Because the policy does not define "claim," we must give it its commonly used meaning. See *Group Ins Co of Mich v Czopek*, 440 Mich 590, 596; 489 NW2d 444 (1992). According to *Black's Law Dictionary* (9th ed), a "claim" is "[t]he assertion of an existing right . . . ." A "claimant" is the person who makes a claim, i.e. "[o]ne who asserts a right or demand, esp. formally." *Black's Law Dictionary* (9th ed).

Under the heading of "What Must Be Done In Case Of A Car Accident Or Loss," the Meemic policy mandates that:

> In the event of an accident, occurrence or **loss**, **you** (or someone acting for **you**) must inform **us** or **our** authorized agent promptly. The time, place and other facts must be given, to include the names and addresses of all involved persons and witnesses.

It then sets forth a list of "other duties" that "[a] person claiming any coverage under this Policy must" perform, which includes cooperating with Meemic, promptly sending copies of notice or legal papers received in connection with the accident, providing written proofs of loss upon request, and submitting to examinations under oath for matters related to the claim. The policy provides a list of additional requirements for a person claiming personal injury protection insurance, underinsured motorist coverage, uninsured motorist coverage, or "car damage insurance" coverage. The common element is that *the person seeking coverage* is required to take actions or provide assistance to Meemic. There is no language mandating that *other individuals covered by the policy* have any rights or obligations with respect to that claim. The only individual who has obligations with respect to making a claim is the insured person who is claiming benefits under the policy, i.e., the claimant. Given the complete absence of language extending the obligations on the claim to all insured persons under the policy, there is no basis to extend Louise and Richard's status as insured persons beyond the date the policy was cancelled. "Just as courts are not to rewrite the express language of statutes, it has long been the law in this state that courts are not to rewrite the express terms of contracts." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 199-200; 747 NW2d 811 (2008).

Here, the only person with "a claim" is Justin. He is the person who sustained an injury arising out of the ownership, operation, maintenance, or use of a motor vehicle, MCL 500.3105, and it is he who had an application for benefits submitted to Meemic on his behalf.[3] Therefore, as set forth in the policy, his claim continues to be covered and was "locked in" as of the date of the injury, irrespective of whether the policy was cancelled at a later date. Louise and Richard, however, did not sustain an injury arising out of a motor-vehicle incident. They do not have a

---

[3] An application for benefits form is required to be completed by a claimant. In this case, a review of Justin's application is consistent with the language in the policy. The application for benefits submitted states that the applicant is Justin, and no other applicant is listed. It provides Justin's name and contact information in the blanks left for information about the "applicant." It provides details about when, where, and how Justin was injured, as well as the type of injuries he sustained. Further, the signature line requests the signature of the "applicant or parent/guardian." Absent from the application is any language even hinting that other individuals insured under the policy but not making a claim have any rights or obligations with respect to the claim.

"claim" with Meemic, nor do they have any obligations with respect to Justin's claim. Instead, Louise and Richard were merely attendant care providers for Justin when they committed fraud.[4]

Meemic asserts that it would be illogical to allow Louise and Richard to escape their obligations under the policy—in this case an obligation not to commit fraud—while simultaneously mandating that Meemic continue to provide benefits under the policy. We disagree. If Louise and Richard had made a claim under the policy before it was terminated, then their obligations under the policy would continue *with respect to their claim*, and Meemic's obligations with respect to that claim would also continue. Because Louise and Richard's obligations would continue under such a scenario, if they committed fraud the policy's fraud-exclusion clause would apply. See *Bahri*, 308 Mich App at 424-426 (stating that when an insured claimant commits fraud in connection with his or her claim the insurer may use a fraud-exclusion clause to deny benefits under the policy). Here, however, because we are obligated to enforce the terms of the contract as they are stated in the contract, we conclude that at the time they committed fraud, Louise and Richard were not insured persons under the policy. Consequently, their fraud did not trigger the fraud-exclusion clause, so Meemic cannot use it to void the policy and deny Justin's claim.[5]

## III. CONCLUSION

In sum, we reverse the trial court's order granting summary disposition in favor of Meemic. We do not read *Bazzi* as dispositive or applicable because there was no fraud in the procurement of the Fortson's no-fault policy with Meemic. Further, the fraud-exclusion clause in the policy is invalid to the extent that it conflicts with MCL 500.3114(1), which entitled Justin to claim statutory benefits under his parents' properly procured no-fault policy. Finally, under the plain language of the policy, Louise and Richard were not insured persons under the policy when they committed fraud, so the fraud-exclusion clause is inapplicable and cannot be used to void the policy and deny Justin's claim.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Jane E. Markey

---

[4] Being a named insured is not a prerequisite to providing attendant-care services under a no-fault policy. Rather, any person approved by the insurance company can provide attendant-care services. The particular responsibilities of the provider are typically based upon the need of the injured person and the skill and training of the provider.

[5] This is not to say that a defrauded insurer does not have a remedy against the person who committed the fraud. See *Titan*, 491 Mich at 555 (stating the elements required to establish fraud and noting that if someone commits fraud the defrauded party may be entitled legal or equitable remedies). See also *Shelton*, 318 Mich App at 655 (noting remedies an insurer may use in the event that someone makes a fraudulent claim).