# STATE OF MICHIGAN

# COURT OF APPEALS

SOUTHEAST MICHIGAN SURGICAL
HOSPITAL, LLC, doing business as
SOUTHEAST MICHIGAN SURGICAL
HOSPITAL, and JAMIE LETKEMANN,

Plaintiffs-Appellees,

v

ALLSTATE INSURANCE COMPANY,

Defendant-Appellant.

FOR PUBLICATION
August 9, 2016
9:00 a.m.

No. 323425
Wayne Circuit Court
LC No. 11-015300-NF

Before: RONAYNE KRAUSE, P.J., and SAWYER and STEPHENS, JJ.

RONAYNE KRAUSE, P.J.

In this no-fault insurance action, the parties filed cross-motions for summary disposition; the trial court denied Allstate Insurance Company's (Allstate) motion and granted summary disposition in favor of Southeast Michigan Surgical Hospital LLC (SEMSH) and Jamie Letkemann (collectively plaintiffs). The trial court concluded that, even though the vehicle's owner and primary driver committed fraud that induced Allstate to issue a no-fault policy covering the vehicle involved in the accident, the innocent third party doctrine precluded Allstate from rescinding the policy to deny coverage of Letkemann's injuries. Allstate appeals by leave granted.[1] We are bound, pursuant to MCR 7.215(J)(1), by this Court's recent opinion in *Bazzi v Sentinel Ins Co*, ___ Mich App ___; ___ NW2d ___ (Docket No. 320518, issued June 14, 2016), to hold that the trial court's decision must be reversed and the matter remanded. However, we agree with the dissenting opinion in that case and, were we not bound, we would decline to continue the trend of eroding injured plaintiffs' recovery options and conclude that the innocent third party doctrine remains a viable part of the law in Michigan; we would therefore affirm. Consequently, we declare a conflict with *Bazzi* pursuant to MCR 7.215(J)(2).

The proceedings arose out of injuries Letkemann suffered as a passenger in a vehicle that was rear-ended. SEMSH provided medical treatment to Letkemann for those injuries and then

---

[1] *Southeast Michigan Surgical Hospital LLC v Allstate Insurance Co*, unpublished order of the Court of Appeals, entered November 25, 2014 (Docket No. 323425).

-1-

asserted the instant third-party no-fault claim against Allstate. Letkemann filed his own action against SEMSH for first-party no-fault benefits, and the claims were consolidated for discovery purposes. During discovery, Allstate discovered that the no-fault policy covering the vehicle in which Letkemann had been a passenger had been obtained on the basis of fraudulent misrepresentations the driver made on behalf of Letkemann's former wife. Allstate then moved for summary disposition, arguing that it was entitled to rescind the policy because of the fraud and thus avoid plaintiffs' claims. Plaintiffs responded by asserting that even if the policy had been procured by fraud, Letkemann was an innocent third party, so Allstate could not rescind the policy as to him. The trial court found that the policy had been procured by fraud, but agreed with plaintiffs that Letkemann was an innocent third party to that fraud and protected against rescission by the innocent third party doctrine. Accordingly, the trial court denied Allstate's motion for summary disposition and instead granted summary disposition to plaintiffs under MCR 2.116(I)(2).

A trial court's resolution of a motion for summary disposition is reviewed de novo to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). When reviewing a motion under MCR 2.116(C)(10), which tests the factual sufficiency of the complaint, this Court considers all evidence submitted by the parties in the light most favorable to the non-moving party and grants summary disposition only where the evidence fails to establish a genuine issue regarding any material fact. *Id*. at 120. Summary disposition is granted "in favor of an opposing party under MCR 2.116(I)(2) if there is no genuine issue of material fact and the opposing party is entitled to judgment as a matter of law." *City of Holland v Consumers Energy Co*, 308 Mich App 675, 681-682; 866 NW2d 871 (2015). We review de novo, as a question of law, the proper interpretation and application of the no-fault act. MCL 500.3101 *et seq*.; *Farmers Ins Exch v AAA of Mich*, 256 Mich App 691, 694; 671 NW2d 89 (2003). "Equitable issues, such as arguments for rescission or reformation, are also reviewed de novo." *Kaftan v Kaftan*, 300 Mich App 661, 665; 834 NW2d 657 (2013).

As an initial matter, we affirm the trial court's conclusion that Letkemann was an innocent third party. The parties functionally agree on the material facts. The vehicle at issue is a 2010 Ford escape owned and insured by David Kreklau. In obtaining insurance for the vehicle, Kreklau represented to Allstate that the vehicle would be garaged at his residence and that he would be the principal driver. However, within days of purchasing the vehicle and obtaining insurance, Kreklau turned the car over to his sister-in-law, Danielle Riordan. For the next six months, the vehicle was driven primarily by Riordan and garaged at her residence. During this time, Riordan made monthly car and insurance payments to Kreklau. Given this evidence, the trial court correctly determined that the insurance policy was procured by Kreklau's fraudulent representations to the insurer, Allstate.

At the time this arrangement was established, Letkemann was living in North Carolina. He did not participate in Riordan and Kreklau's scheme to defraud Allstate and made no representations to Allstate. Subsequently, Letkemann moved into Riordan's residence and later married Riordan. Letkemann owned and insured his own vehicle without the assistance of Kreklau but would occasionally drive the 2010 Escape insured under Kreklau's name. During the few months they were married, Letkemann and Riordan would both contribute money to the payments made to Kreklau. Letkemann testified that he understood that the Escape was in

Kreklau's name because it would be cheaper than naming Riordan as the driver. During the time in which Riordan and Letkemann were cohabitating prior to marriage, Allstate informed Kreklau that the policy needed to be renewed. Kreklau signed the renewal and Allstate did not personally ask him for additional information. Allstate's investigation at the time of renewal relied primarily on Kreklau's statements made when initially obtaining the policy.

Clearly, Letkemann was not involved in, or knowledgeable of, the initial obtaining of coverage. Equally clearly, Letkemann received a benefit from the fraudulently obtained insurance. The innocent third party doctrine—presuming its continued viability for the moment—assumes that the third party will receive benefits that he or she otherwise would not be entitled to as a result of the fraud. The public policy allowing the third party's receipt of these benefits is undergirded by the third party's innocence in the fraudulent procurement of the policy. Notwithstanding the renewal of the policy during Letkemann's cohabitation with Riordan, there is no evidence that Letkemann was aware of that renewal, and there is no evidence that even Kreklau made any representations at that time. Because Letkemann did not make a fraudulent misrepresentation nor allow such a misrepresentation to be made to the insurer, Letkemann should be protected by the innocent third party doctrine despite Kreklau and Riordan's fraud in obtaining the policy. The trial court's factual findings are affirmed.

Before addressing the innocent third party doctrine, we also note that plaintiffs have asserted two alternative grounds for affirmance that are unrelated to the innocent third party doctrine and would therefore, if applicable, render any analysis of that doctrine moot. This Court will, after all, affirm a correct result whether or not the trial court employed proper reasoning to achieve it. *Neville v Neville (On Remand)*, 295 Mich App 460, 470; 812 NW2d 816 (2012).

Plaintiffs first argue that Allstate never validly asserted fraud in the inducement as an affirmative defense and, therefore, waived it. Plaintiffs correctly note that fraud in the inducement of a policy is an affirmative defense as a mechanism for avoiding the enforcement of an insurance policy. *Stein v Home-Owners Ins Co*, 303 Mich App 382, 387-388; 843 NW2d 780 (2013). Furthermore, we agree with plaintiffs that Allstate did not validly assert fraud in the inducement; although it generally described plaintiffs' claims as "fraudulent," it did not explain why, how, or any implications thereof. However, "[a]lthough affirmative defenses are not 'pleadings,' *McCracken v City of Detroit*, 291 Mich App 522, 528; 806 NW2d 337 (2011), the court rules unambiguously permit them to be amended in the same manner as pleadings." *Tyra v Organ Procurement Agency of Mich*, 302 Mich App 208, 213; 850 NW2d 667 (2013), rev'd in part on other grounds 498 Mich 68 (2015).

Rather, a party's failure to set forth a valid statement of an affirmative defense in its first responsive pleading does not necessarily result in waiver of the defense. *Id.* at 213-214. A party "may move to amend [his or her] affirmative defenses to add any that become apparent *at any time*, and any such motion should be granted as a matter of course *so long as doing so would not prejudice the plaintiff*." *Id.* at 213 (emphasis added), citing MCR 2.118(A)(2) (providing that, where a party requires leave to amend a pleading, "[l]eave shall be freely given when justice so requires."). Under MCR 2.118(A)(2), a plaintiff is prejudiced where an amendment adds an affirmative defense "*after* the expiration of the limitations period," thereby precluding the plaintiff from a recovery that could have been secured had the affirmative defense been timely

asserted. *Id.* at 214. It appears undisputed that the fraud at issue did not become apparent until discovery took place.

A one-year statute of limitations generally applies to an insured's claim for personal protection insurance (PIP) benefits, measured from "the date of the accident causing the injury," with two exceptions: (1) "when 'written notice of injury as provided herein has been given to the insurer within 1 year after the accident,'" and (2) "when 'the insurer has previously made a payment of [PIP] benefits for the injury.'" *Jesperson v Auto Club Ins Ass'n*, 306 Mich App 632, 642; 858 NW2d 105 (2014), lv gtd 497 Mich 987 (2015), quoting MCL 500.3145(1). Where a responsible insurer cannot be identified, or there is a dispute regarding the priority of various insurers, an insured can submit an Assigned Claims Facility (ACF) claim under MCL 500.3172. To do so, however, the insured must "notify the Michigan automobile insurance placement facility of [the] claim within the time that would have been allowed for filing an action for [PIP] benefits if identifiable coverage applicable to the claim had been in effect." MCL 500.3174; *Spencer v Citizens Ins Co*, 239 Mich App 291, 309; 608 NW2d 113 (2000).

Other than Allstate, there is no evidence that any no-fault insurer in the chain of priority to pay plaintiffs' claims was ever identified, or that such an insurer made a payment of PIP benefits or received written notice of Letkemann's injuries. Likewise, there is no evidence that Allstate ever made a payment of PIP benefits for Letkemann's injuries (LCF), but it was, within a year of the accident, evidently provided with notice of the injuries. The accident at issue occurred on December 12, 2010, and plaintiffs did not file suit against Allstate until December 18, 2011. Because this was more than one year after the accident causing Letkemann's injuries, they evidently relied on the notice exception in MCL 500.3145(1).

As a consequence, plaintiffs were *already* time-barred by the time Allstate became a party. Had Allstate asserted a valid affirmative defense immediately, the result would have been the same: it would have been too late for plaintiffs to file a new claim against a different insurer, MCL 500.3145(1), and also too late to file the requisite notice for an ACF claim, MCL 500.3174; *Spencer*, 239 Mich App at 309. Accordingly, whether or not Allstate's delay in asserting the claim could be considered good practice, it did not have a practically prejudicial effect. See *Jesperson*, 306 Mich App at 647 ("[H]ad the trial court found that [the] defendant had failed to plead the statute of limitations defense with sufficient clarity, it could have, in its discretion, granted [the] defendant leave to amend . . . in which case the result would be the same—the limitations period of MCL 500.3145(1) would still bar plaintiff's claim.").

Plaintiffs also assert that Allstate is equitably estopped from rescinding the policy. Plaintiffs argue that Allstate's initial representations that it insured the vehicle induced plaintiffs to believe that it was in fact insured, plaintiffs justifiably relied on that belief, and if Allstate could not deny that it insured the vehicle, plaintiffs would be prejudiced because it was too late for them to file a claim seeking payment of no-fault benefits for the accident from the ACF. As discussed, plaintiffs were already time-barred from pursuing an ACF claim before the complaint was filed in this action. Prejudice is an essential element of establishing an equitable estoppel. *Hughes v Almena Twp*, 284 Mich App 50, 78; 771 NW2d 453 (2009). The party seeking equitable estoppel bears "a heavy burden" of proving its applicability. *Genesee Co Drain Comm'r v Genesee Co*, 309 Mich App 317, 333; 869 NW2d 635 (2015). Because plaintiffs cannot establish prejudice, they cannot establish an equitable estoppel.

-4-

Therefore, remaining at issue is whether the innocent third party doctrine is *legally* available. "Insurance policies are contracts and, in the absence of an applicable statute, are 'subject to the same contract construction principles that apply to any other species of contract.'" *Titan Ins Co v Hyten*, 491 Mich. 547, 554, 817 NW2d 562, 567 (2012); quoting *Rory v Continental Ins Co*, 473 Mich. 457, 461, 703 NW2d 23 (2005). Under the common law of this state, an insurer may deny coverage under an insurance contract where that insurance policy was procured by the policy holder's fraudulent "misrepresentation material to the risk and hazard" attendant in the policy. *Keys v Pace*, 358 Mich 74, 82-83; 99 NW2d 547 (1959). In *State Farm Mut Auto Ins Co v Kurlyowicz*, 67 Mich App 568, 578-79; 242 NW2d 530 (1976), this Court held that an insurer may not invoke this common law exception where the insurer has not undertaken a reasonable discovery to uncover easily ascertainable fraud within the 55 day window in which MCL 500.3220 allows an insurer to cancel a policy.

Applicable to this case, Michigan's insurance statutes separate personal liability coverage from personal protection insurance. Under MCL 257.520, an insurer is required to insure the owner of the policy and authorized persons driving the covered vehicle at a minimum dollar amount for liability arising from injury to other persons or property. MCL 257.520(b)(2). Further, under MCL 257.520(f)(1), "[o]nce an innocent third party is injured in an accident in which coverage was in effect with respect to the relevant vehicle," the insurer cannot invoke the common law rule to avoid mandatory coverage, and "is estopped from asserting fraud to rescind the insurance contract." *Lake States Ins Co v Wilson*, 231 Mich App 327, 331; 586 NW2d 113 (1998).

Nonetheless, the parties to an insurance contract are free to contract for personal liability coverage in excess of the statutory minimums. In *Hyten*, our Supreme Court was faced with the question of whether an insurer may avail itself of the traditional common law remedy to avoid liability coverage amounts in excess of the statutory minimum where the insurance contract was procured by fraud and coverage extended to an innocent third party. The insurer in *Hyten* challenged only its responsibility for the liability coverage in excess of the statutory minimum, acknowledging its responsibility for the statutory minimum liability coverage. *Hyten*, 491 Mich at 552 n 2. Our Supreme Court overruled *Kurlyowicz*, holding that when an insurance contract providing coverage in excess of the statutory minimum is procured via fraudulent misrepresentation, the insurer may invoke the traditional remedy to rescind the excess coverage "notwithstanding that the fraud was easily ascertainable and the claimant is a third party." *Id.* at 572-73.

What *Hyten* did not address is an insurer's responsibility for personal protection coverage (aka, PIP benefits) under Michigan's statutory "no-fault" insurance regime. Michigan's "no-fault" insurance regulations require vehicle owners to obtain personal protection insurance. MCL 500.3101(1). A "person suffering accidental bodily injury arising from a motor vehicle accident while an occupant of a motor vehicle" may seek personal protection insurance benefits from "the insurer of the owner or registrant of the vehicle occupied." MCL 500.3114(4)(a). An injured occupant is entitled to certain unlimited benefits covering the medical expenses resulting from the accident. MCL 500.3105; MCL 500.3107. The insurance company will pay the entirety of the claim but may be reimbursed by the Michigan Catastrophic Claims Association for expenses incurred in excess of a specified dollar amount. MCL 500.3104. Accordingly, there is no need to contract for excess personal protection benefits coverage.

An insurer may invoke the common law rule above to avoid payment of PIP benefits when the policy was procured by fraud. *Lake States Ins*, 231 Mich App at 331. However, this Court has issued a "long line of published opinions indicating that, although fraud in the inducement was generally a valid basis to rescind a no-fault policy, such rescission did not avoid a no-fault insurer's obligation to pay benefits to innocent third parties." See, e.g., *Hammoud v Metro Prop & Cas Ins Co*, 222 Mich App 485, 488; 563 NW2d 716 (1997); *Katinsky v Auto Club Ins Ass'n*, 201 Mich App 167, 171; 505 NW2d 895 (1993); *Darnell v Auto-Owners Ins Co*, 142 Mich App 1, 9; 369 NW2d 243 (1985); *Kurlyowicz*, 67 Mich App at 578, overruled in part by *Hyten*, 491 Mich at 572-73.

We are bound by *Bazzi*'s holding that the innocent third party doctrine is no longer viable in any situation after our Supreme Court's decision in *Hyten*. Nevertheless, *Hyten* involved the avoidance of contractual insurance entitlements in excess of the statutory minimum; here, the alleged innocent third party's insurance entitlement is statutorily mandated, not contractual. As this court observed in *State Farm Mut Auto Ins Co v Michigan Muni Risk Mgmt Auth*:

> "The insurer in *Titan* did not seek to avoid payment of statutorily mandated no-fault benefits; in fact, that insurer acknowledged its liability for the minimum liability coverage limits. [*Hyten*, 491 Mich at 552 n 2.] Nor did *Titan* address a claim for PIP benefits from an innocent third party. Thus, the holding of *Titan*, that an insurance carrier may seek reformation to avoid liability for *contractual* amounts in excess of statutory minimums, does not compel a finding that *Titan* overruled the many binding decisions of this Court applying the 'innocent third-party rule' in the context of PIP benefits and an injured third party who is statutorily entitled to such benefits. [*Id*. at 552.]" [*State Farm Mut Auto Ins Co v Michigan Muni Risk Mgmt Auth*, unpublished opinion per curiam of the Court of Appeals, issued February 19, 2015 (Docket Nos. 319709 & 319710) slip op. at 9.]

We have not found any authority other than *Bazzi* that invalidates the innocent third party doctrine in the context of an insurer's responsibility for statutorily mandated personal protection benefits, and were we not bound by *Bazzi*, we would find that the innocent third party doctrine is still viable in the context of an innocent third party's claim for PIP benefits under Michigan's no-fault insurance act. Furthermore, we agree completely with the dissenting opinion authored by Judge BECKERING in *Bazzi*, and we adopt it in its entirety herein.

We are required to reverse the trial court and remand for further proceedings consistent with this opinion. However, we do so strictly because MCR 7.215(J)(1) requires us to do so, and we call for the convening of a special conflict panel pursuant to MCR 7.215(J)(2).

/s/ Amy Ronayne Krause
/s/ Cynthia Diane Stephens