*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VHS OF MICHIGAN, INC doing business as THE
DETROIT MEDICAL CENTER,

UNPUBLISHED
April 1, 2021

Plaintiff-Appellee,

v

No. 352881
Oakland Circuit Court
LC No. 2019-174743-NF

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

Defendant-Appellant.

Before: TUKEL, P.J., and JANSEN and CAMERON, JJ.

PER CURIAM.

In this first-party no-fault action, defendant, State Farm Mutual Automobile Insurance company, appeals by leave granted[1] the trial court's order denying its motion for leave to amend its affirmative defenses to plead fraud with particularity. We reverse, vacate the trial court's February 10, 2020 order denying defendant's motion to amend its affirmative defenses to plead fraud with particularity, and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a motor vehicle accident that occurred on December 2, 2018 near the intersection of Evergreen Road and Seven Mile Road in Detroit, Michigan. At the time of the accident, defendant's insured, Ferlita Reyes, was driving a 2009 GMC Yukon XL, and there were five other passengers in the vehicle. At some point following the accident, Reyes, sought medical treatment with plaintiff, VHS of Michigan, Inc, doing business as The Detroit Medical Center (the DMC), in the emergency room. Under MCL 500.3143, Reyes executed an assignment of all her

---

[1] *VHS of Michigan, Inc v State Farm Mut Auto Ins Co*, unpublished order of the Court of Appeals, entered June 17, 2020 (Docket No. 352881).

-1-

rights, privileges, and remedies to payment to plaintiff from defendant for PIP benefits to which Reyes may be entitled under MCL 500.3101 *et seq.*, and under her insurance contract.

On June 20, 2019, plaintiff filed the complaint in the instant action, asserting that it had submitted reasonable proof of charges incurred to defendant and demanded payment, however, defendant unreasonably delayed or refused payment for the balance of benefits due. Plaintiff claimed that defendant had breached its contractual and statutory obligation to provide no-fault benefits by unreasonably delaying or refusing payment and sought a judgment under MCR 2.605 declaring defendant liable for no-fault benefits, a judgment in the amount of the total liability due, plus costs, interest, and attorney fees.

Defendant timely answered the complaint, denying most of the allegations contained therein, and *inter alia*, asserted the following affirmative defenses:

> 1.    Plaintiff's patient has made statements which do not comport with known facts. She has made, caused to be made, or submitted false statements in connection with this claim that would, therefore, bar her from recovering benefits. If discovery reveals any actionable fraud, [d]efendant will seek leave to amend its affirmative defenses to state a fraud or rescission defense with more particularity.

> 2.    Even if [p]laintiff's patient did not intentionally make false representations, [d]efendant may be entitled to void coverage as a non-intentional or innocent misrepresentation of material fact. *Wiemayer v Midland Mutual Ins*, 414 Mich 369 (1992).

The parties engaged in written and oral discovery, and on January 22, 2020, before the expiration of the discovery period on February 4, 2020, defendant moved to amend its affirmative defenses to plead fraud with particularity. Defendant argued that discovery had revealed inconsistencies between Reyes' account of the accident, the five other passengers' account of the accident, medical documentation, and the opinion of defendant's expert, Don Parker, who had reviewed the initial photographs of the vehicle, inspected the vehicle, downloaded the vehicle's information from the event data recorder (EDR), and reviewed the occupants' testimony.

At the time of the accident, Reyes had been driving a 2009 GMC Yukon XL and had five passengers in the vehicle: Curtis Houston, FaQuan Houston, Darrell Nickerson, Jermaine Dixon, and Kirshean Nelson. Reyes recalled that she had picked up the passengers in order to meet other friends for dinner at a restaurant. At her deposition, Reyes testified that while driving on Evergreen Road around 9:30 p.m., she looked into her rearview mirror and became aware of a red Ford F-150 driving "crazy" behind her. At some point, the F-150 began to pass Reyes on the left and made contact with the Yukon. Reyes could not remember if the F-150 made contact with the side or rear of the Yukon, but she was certain that impact occurred. Reyes then lost control of the Yukon, and swerved to the right and into a parked Chevrolet Impala. According to Reyes, the F-150 fled the scene. Reyes further testified that she never saw the damage to the Yukon because it was towed from the scene and repaired by defendant. The five other occupants of the Yukon had similar recollections of the accident: that the F-150 had been traveling behind the Yukon in the same direction. Medical records also indicated that the passengers of the Yukon initially reported that the Yukon had been rear-ended by another vehicle.

However, defendant argued, the Michigan Traffic Crash Report was inconsistent with the occupants' recollection of the accident. The report detailed:

> Per a witness at the scene, Unit 1, a red Ford F-150, crossed left of center while southbound on Evergreen. Unit 1 was driving at a high rate of speed and sideswiped Unit 2. Unit 2 then rear-ended Unit 3, which was also northbound on Evergreen. Unit 1 left the scene.

The expert report created by Parker also called into question the occupants' version of events. In support of its motion to amend, defendant attached a copy of the collision damage analysis performed by Parker. Parker wrote in that report that he performed the analysis "to quantify the nature and severity of the subject collision." Parker reviewed the traffic crash report, the CARFAX vehicle history for the subject 2009 GMC Yukon XL, the repair estimate for the Yukon, deposition transcripts from occupants of the Yukon, industry information for both the Yukon and the Chevrolet Impala involved in the secondary collision, and aerial and street view photographs of the claimed collision site. Parker also inspected the Yukon in person at a car dealership after the vehicle had been repaired. During this inspection, Parker was able to access the airbag control module (ACM) which contained an EDR that was "capable of capturing certain pre-crash and crash information[.]" The EDR was imaged by Parker using a "Bosch crash data retrieval (CDR) tool for retained data relevant to the subject incident." Parker also wrote that "[i]n addition to the above-mentioned materials and activities, I have relied on my education and training and my experience in vehicle design, crash testing, crash analysis, and crash reconstruction" in formulating opinions regarding this accident.

Parker first addressed certain inconsistencies in the deposition transcripts he had reviewed, and asserted that those inconsistencies challenged the veracity of the testimony. For example, Reyes had testified that Nickerson was a "childhood friend" of hers, but Nickerson testified that he had only known Reyes for "maybe a couple of years." Parker also noted inconsistencies across the testimony regarding who had been picked up first by Reyes, and whether the occupants had stayed in the vehicle after the collision, or had gotten out and waited for the police and EMS while sitting on the curb.

Parker next wrote that the repair estimate of the Yukon included photographs of the Yukon that had been taken at the time the estimate was created. These photographs showed damage to the front bumper cover, the plastic lower shield panel, the front grille, the rear bumper cover, and the right tail lamp. All of the aforementioned parts required replacement. There was no structural damage to the Yukon, and no adjacent components such as the radiator, the air conditioning condenser, or the headlights, required replacement or repair. Parker opined that there was "little discernable damage to the front end of the Yukon. The hood and grille appear undisturbed, with no buckling of the hood as designed for a frontal impact. Only some minor disruption is visible at the lower central section of the front bumper cover." The rear bumper cover and the right rear quarter panel had some minor longitudinal scratching and shallow denting visible, however this damage was not consistent with any kind of accident, and because of the location of the damage, it was not consistent with the "claimed collision scenario." There were no repairs to be made on the left side of the Yukon. Parker went on to opine that the "lack of damage to the front end of the Yukon is consistent with at most a minor impact or bump into another vehicle or object. It is not consistent with a 30+ mph impact into another vehicle such as the subject Chevrolet Impala."

Finally, Parker addressed the CDR report for the Yukon's EDR. The EDR was imaged on July 8, 2019, and there were no collision events stored in its memory. Parker submitted that "[f]rom comparison to the extent and nature of physical damage" it is likely that "[t]he incident that caused the damage to the Yukon was not of sufficient severity to induce a 5 mph change" in vehicle velocity so as to register a collision event in the EDR, or that "[i]n the 3,157 miles of usage subsequent to the repair estimate, the ignition had been cycled at least 250 times[,] which would have reset the EDR. However, Parker opined that "from the combination of physical evidence and imaged EDR data, there is no evidence of a hit-and-run impact to the left rear or side of the subject Yukon. Any frontal impact into another object, such as the subject Chevrolet Impala, was very minor[.]" Ultimately, Parker offered four opinions:

> With a reasonable degree of scientific certainty, my opinions regarding the above-captioned matter are as follows:
>
> 1. On December 2, 2018, Ms. Ferlita Reyes was reportedly operating the subject 2009 GMC Yukon SUV northbound on Evergreen Road in Detroit, Michigan when the Yukon was impacted in the left rear side by another vehicle, which left the scene.
>
> 2. There was no evidence of damage, as documented in post-collision photographs and repair documents, and as confirmed during my inspection of the vehicle, to the rear or left side of the Yukon to support the claim of a first impact by a hit-and-run vehicle, causing a loss of control.
>
> 3. The minor level of relevant front-end damage to the subject GMC Yukon SUV, as documented in post-collision photographs and repair documents, and as confirmed during my inspection of the vehicle, is consistent with at most a minor frontal impact with another object.
>
> 4. Significant discrepancies in vehicle occupant testimony reduces the veracity of that testimony.

Finally, defendant attached two Social Media Investigation Reports for two of the passengers: Curtis Houston and Kirshean Nelson. With respect to Houston, the investigation revealed:

> On December 12, 2018, the subject posted a Facebook live video of himself in his car eating tacos. At the time stamp of approximately 3:07[,] he gets out of the vehicle and drops the phone. At the time stamp of approximately 5:30, he reentered the vehicle with an unknown male. During a conversation, the unknown male asked him "what was that --- you was talking about, that insurance shit?" He replied that he was trying to get a rental and put full insurance on it and stage a car accident and put 3 or 4 people in it. He stated that they all had to have the same story and make a claim and get a claim number and start taking them to therapy. Get $100 every Friday in pills. The unknown male said something that was unclear, and the subject replied, "bro done took me through it, I mean we done did it." He said, "this was the plan from the get-go, bro showed me the circles and gave me the sauce and I

-4-

get off his coattails and start making my own." He went on to discuss what exactly to say to the doctor to get stronger pills. He discussed how he has a girlfriend on the side, and he told her he needs an address with no car registered to it. He further stated he needs to find somewhere to get a cheap rental. He said get a 2014 with full coverage and "flip that bitch." He said he want[s] to try and keep it for two days and then roll it over. He then makes a joke "hit and run" with sound effects. He said how he gives someone $50.00 to smash a car.

\* \* \*

On September 14, 2018, he posted "OK I got something good for y'all if anyone has been in a car accident in the past year inbox me asap. It's money in it 4 us."

With respect to Nelson, the investigation revealed:

Mr. Nelson bragged about money from selling drugs on multiple occasions. In a Facebook live video on March 12, 2019, he was seen counting out one-hundred[-]dollar bills and fanning the money. He then put a pill bottle up to the camera and stated over "they going to get me rich dumb ---." On March 5, 2018, the subject posted a Facebook live video and stated he was on his way to the city and would be "------- with those doctors in the morning."

\* \* \*

On January 7, 2019, he posted, "Who got good license and wanna make ah 1000$$ hit by nbox No bs."

Defendant argued that these videos were evidence of a scheme or plan to defraud defendant by staging fake car accidents in order to defraud insurance companies, particularly in light of Parker's opinion that the accident at issue did not occur as stated by Reyes or the other occupants of the vehicle.

Moreover, defendant submitted, it had been tipped off that the accident was fraudulent by a pain management doctor who had treated all of the occupants of the Yukon. Dr. Vinod Sharma, M.D., "wrote a letter to [defendant]" in March 2019 "indicating that he believed this was a fraudulent accident." Dr. Sharma also gave testimony in the form of a statement on the record, where he testified that he eventually discharged all six patients because he learned through the Michigan Automated Prescription System (MAPS) that they were also treating with another pain management physician, and thus Dr. Sharma classified them as "drug-seekers" or "doctor shoppers," meaning they were looking for doctors to prescribe them pain medications. Dr. Sharma recalled that when drug tested, all were "clean," and thus, Dr. Sharma opined that they were not taking the prescribed pain medication, but selling it.

Defendant argued that the foregoing evidence, revealed through the discovery process, prompted its motion to amend its affirmative defenses under MCR 2.118(2) so that it could plead fraud with particularity. Defendant argued that its motion was timely, and that plaintiff could not be surprised by its motion given that that defendant had pleaded "cautionary affirmative defenses

… from the outset" and therefore "nobody involved in this case can be surprised or will be unfairly prejudiced by the amendment[.]" Moreover, defendant argued, the amendment would not be futile: given the evidence, there could be little doubt that the accident had been staged, and Dr. Sharma's testimony revealed a clear motive.

Plaintiff opposed defendant's motion to amend, arguing that the trial court should find defendant waived fraud as an affirmative defense because defendant failed to plead fraud with particularity in a responsive pleading, here its answer to the complaint, as is required under MCL 2.111(F)(2).[2] First, plaintiff noted that the majority of the documents relied on by defendant had been produced to plaintiff for the first time as exhibits to the motion to amend. Moreover, plaintiff argued, defendant's motion was untimely. Defendant had all the evidence it needed to move to amend several months earlier, but strategically chose to wait until right before the close of discovery. Plaintiff argued that the timing of defendant's motion showed bad faith because the delay denied it "the fair and reasonable notice necessary to rebut this defense."

The trial court held a hearing on defendant's motion where the parties argued consistently with their briefs. The trial court ultimately denied defendant's motion, reasoning:

> Based on the [c]ourt's review of the motion, the briefs attached there, I don't find that the defendant . . . has established a reasonable basis for their undue delay in bringing this motion before the [c]ourt. I was satisfied initially that they were at least put on notice in March of 2019 of the potential that fraud existed, and while I accept what's offered by counsel that Judge, it wasn't specific enough, and yes, we got this information, but it's not specific enough, so I'd assume from what's presented they started the investigation along those lines, but then in September of 2019, they do a deposition and I get that this is a treating physician, he was a treating physician when he sent the letter to [defendant] that said in my opinion, this person – he said a number of things, he even referred about drug-seeking, but more importantly, as it relates to the accident, that it was his opinion that his accident was staged, and that this may be a fraudulent claim. The deposition happens in September of 2019, and what's one of the subject matters that's covered, this very correspondence.
>
> So the [c]ourt views that as this is a physician, who's a treating physician of one of the plaintiffs, who first brings this to [defendant's] attention in March of 2019, they subsequently depose this physician, and in the interim, they're not just

---

[2] Plaintiff also argued that the interview of Dr. Sharma qualified as an ex parte interview, and under *Holman v Rasak*, 486 Mich 429, 442; 785 NW2d 98 (2010), defendant was required to give notice of the interview to plaintiff and seek entry of a HIPPA-compliant qualified protective order before attaching the interview transcript to its motion. See also MCL 600.2157; 45 CFR 164.512(e). Thus, plaintiff argued, the trial court should strike defendant's motion to amend for failure to comply with federal and state privacy laws. The trial court did acknowledge that Dr. Sharma's interview qualified as an ex parte interview, and thus falls within the purview of our Supreme Court's holding in *Holman*, however the motion to amend was not denied on this basis.

doing nothing, they're starting to investigate in detail what's raised by this same physician, and then they depose him, and under oath, subject to perjury, he elicits – they elicit the same information or generally the same information.

What I hear here today is that Judge, we were still investigating, we were determining and establishing with particularity that fraud existed. Well, I'm satisfied that on the information provided in March, and surely by that time they took the deposition in September and the information under oath coming forth again, that they had a basis to file at that time a motion to amend their affirmative defense, and they didn't do that.

\* \* \*

I find that there was undue delay in this case. The motion is not timely. It would bring and be severely prejudiced to the plaintiffs at this point, and I haven't heard any reasonable excuse for more timely bringing this motion, and therefore this motion is denied.

An order denying defendant's motion for the reasons stated on the record was entered on February 10, 2020. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion to amend affirmative defenses for an abuse of discretion. *Weymers v Khera*, 454 Mich 639, 654, 563 NW2d 647 (1997). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes, or when the trial court makes an error of law. *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 405; 952 NW2d 586 (2020).

## III. ANALYSIS

Defendant's sole argument on appeal is that the trial court abused its discretion by denying its motion to amend its affirmative defenses to plead fraud with particularity. We agree.

Leave to amend "shall be freely given when justice so requires." MCR 2.118(A)(2). Amendment is generally a matter of right. *In re Kostin Estate,* 278 Mich App 47, 51, 748 NW2d 583 (2008).

> Ordinarily, a motion for leave to amend should be granted, and should be denied only for the following particularized reasons: (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party by virtue of allowance of the amendment, or (5) futility of the amendment. [*Lane v KinderCare Learning Ctrs, Inc*, 231 Mich App 689, 697, 588 NW2d 715 (1998).]

"Michigan's procedural rules recognize and account for the fact that it may not be possible to plead fraud, or indeed anything else, with particularity at the commencement of a case. A party may move to amend its affirmative defenses at any time, and leave should be granted freely unless

doing so would prejudice the other party." *Glasker-Davis v Auvenshine*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 345238); slip op at 5, citing *SE Mich Surg Hosp, LLC v Allstate Ins Co*, 316 Mich App 657, 663; 892 NW2d 434 (2016); *Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 320-321; 503 NW2d 758 (1993). Indeed, MCR 2.118(C) provides that amendments to conform to the evidence "may be made on a motion of a party at any time, even after judgments[,]" and MCR 2.111(F)(3) confirms that "[a]ffirmative defenses must be stated in the party's responsive pleading, either as originally filed or *as amended* in accordance with MCR 2.118." (emphasis added).

Here, defendant sought to amend its affirmative defenses to plead fraud with particularity with respect to fraud allegedly committed by Reyes, defendant's insured, when making the underlying claim for PIP benefits, in violation of an anti-fraud provision in the insurance contract between Reyes and defendant.

> A defense premised on an alleged violation of an anti-fraud provision in an insurance policy constitutes an affirmative defense. *Baker v Marshall*, 323 Mich App 590, 597-598; 919 NW2d 407 (2018). "In allegations of fraud [. . . ] the circumstances constituting fraud [. . .] must be stated with particularity." MCR 2.112(B)(1). Thus, it is insufficient simply to state that a plaintiff's conduct had been fraudulent. *SE Mich Surg Hosp*, 316 Mich App [at] 663. [*Glasker-Davis*, ___ Mich App at ___; slip op at 6.]

Being aware of this requirement, defendant moved to amend its affirmative defenses following the close of its investigation into Reyes' claim.

We conclude that the trial court abused its discretion by denying defendant's motion to amend its affirmative defenses to plead fraud with particularity on the basis that defendant's motion was untimely. "Delay, alone, does not warrant denial of a motion to amend." *Weymers v Khera*, 454 Mich 639, 650; 563 NW2d 647 (1997). A trial court must also find that delay was the result of bad faith, or the opposing party suffered prejudice. *Id.* " 'Prejudice' within the meaning of MCR 2.118(C) does not mean the opposing party might lost on the merits or might incur some additional costs; rather, it means the opposing party would suffer an inability to respond that the party would not otherwise have suffered if the affirmative defense had been validly raised sooner." *Glasker-Davis¸* ___ Mich App at ___; slip op at 5, citing *Ostroth v Warren Regency, GP, LLC*, 263 Mich App 1, 5; 687 NW2d 309 (2004); *SE Mich Surg Hosp*, 316 Mich App at 663-665; *Stanke*, 200 Mich app at 321-322.

In denying defendant's motion to amend as untimely, the trial court did not make a finding that defendant acted in bad faith; rather, the trial court found that defendant's delay resulted in prejudice to plaintiff. We cannot agree. In its original answer to the complaint, defendant did assert a fraud defense, pleading:

> Plaintiff's patient has made statements which do not comport with known facts. She has made, caused to be made, or submitted false statements in connection with this claim that would, therefore, bar her from recovering benefits. If discovery reveals any actionable fraud, [d]efendant will seek leave to amend its affirmative defenses to state a fraud or rescission defense with more particularity.

Indeed, in its first responsive pleading, defendant provided plaintiff with reasonable notice that it would be pursuing a fraud defense. Plaintiff claims that it suffered prejudice because the delayed motion to amend affected its "ability to address [defendant's] allegations of fraud during the course of depositions of the parties which [defendant] alleges committed it." However, not only was plaintiff on notice that defendant would be perusing a fraud defense, but it had counsel present at the depositions of Reyes and the other occupants of the Yukon. Notably, plaintiff does not claim that the proposed amendment would prevent it from receiving a fair trial. *Weymers*, 454 Mich at 659. We conclude that plaintiff has not claimed prejudice sufficient to deny defendant's motion for leave to amend, and the trial court abused its discretion by finding otherwise.

We also briefly note that plaintiff argues any amendment to defendant's affirmative defenses to plead fraud with particularity would be futile, in light of *Haydaw v Farm Bureau Ins Co*, ___ Mich App ___; ___ NW2d ___ (2020) (Docket No. 345516), where this Court concluded that a "fraud provision in a policy does not apply to statements made during the course of litigation," and *Meemic Ins Co v Fortson*, 506 Mich 287; 954 NW2d 115 (2020), where our Supreme Court held that fraud defenses are now limited to what is covered in the no-fault act and defenses available under common law. Plaintiff argues that this line of Michigan jurisprudence establishes once a policy is in place, fraud committed by the insured no longer may be grounds for rescinding the entire policy. Thus, defendant's "request for leave is now undisputedly futile as the defense it sought to employ is no longer available based upon the latest Supreme Court precedent." Plaintiff also submits that *Williams v Farm Bureau Mut Ins Co*, ___ Mich App ___; ___ NW2d ___ (2021) (Docket No. 349903) establishes the futility of any amendment to defendant's affirmative defenses, where this Court concluded: "*Meemic* held that antifraud provisions in no-fault policies apply to fraud in the inducement but not to allegations of postprocurement fraud. Accordingly, the policy provision on which [the] defendant and the trial court relied is 'invalid and unenforceable' to the degree a no-fault insurer seeks to apply it to allegations of postprocurement fraud in a claim under a mandatory coverage[.]" *Williams*, ___ Mich App at ___; slip op at 7.

Plaintiff's futility argument fails for two reasons. First, the line of cases on which plaintiff relies is procedurally distinguishable from this case. In *Haydaw*, *Meemic*, and *Williams*, the pleadings had been completed, and litigation had proceeded to the summary disposition phase. Comparatively, in this case, the discovery period had not yet expired when defendant moved to amend its affirmative defenses, and no motion for summary disposition had been filed by either party. Second, this case is factually distinguishable from *Haydaw*, *Meemic*, and *Williams*, where the insurers sought to rescind or void the subject insurance policies on the basis of allegations of fraud on the part of the insured. Here, defendant has not sought to rescind its policy. Rather, it is seeking to plead fraud with particularity in order to justify denial of claimed benefits. Unlike the insurer in *Williams*, in this case, defendant claims that "the evidence concerning the accident, injury and treatment . . . would be insufficient to qualify for PIP benefits." *Williams*, ___ Mich App ___; slip op at 2. Indeed, in *Williams*, this Court reiterated that "[a] fact-finder is free, and has always been free, to conclude that some or all of plaintiff's claimed benefits were properly denied by defendant." *Williams*, ___ Mich App at ___; slip op at 7.

-9-

We reverse, vacate the trial court's February 10, 2020 order denying defendant's motion to amend its affirmative defenses to plead fraud with particularity, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jonathan Tukel
/s/ Kathleen Jansen
/s/ Thomas C. Cameron