*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNIVERSITY DRIVE OFFICE BUILDING LLC,

        Plaintiff-Appellee,

v

ANDALUS MEDITERRANEAN GRILL INC and
ABBAS AHMAD,

        Defendants-Appellants.

UNPUBLISHED
January 21, 2025
2:06 PM

No. 365359
Macomb Circuit Court
LC No. 2021-003716-CB

Before: BOONSTRA, P.J., and K. F. KELLY and YOUNG, JJ.

PER CURIAM.

        Defendants appeal by right the final judgment entered by the circuit court (the trial court) after a bench trial verdict awarding plaintiff $142,878 in damages. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.[1]

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

        Plaintiff, as landlord, and defendant Andalus Mediterranean Grill, Inc., as tenant, entered into a 10-year commercial lease agreement on October 28, 2020. The expressed intent was for Andalus to operate a restaurant on the premises. Defendant Abbas Ahmad, who signed the lease as Andalus's president, also signed a personal guarantee. The lease agreement provided for $0 rent for the first six months. Rent for the subsequent six months was $5,000 per month, rent for years two to five was $6,000 per month, and rent for years 6 to 10 was $6,900 per month. The

---

[1] Plaintiff challenges our jurisdiction to hear this appeal, contending that defendants' claim of appeal was untimely filed. We exercise our discretion in the interest of judicial economy to treat defendants' claim of appeal as a delayed application for leave to appeal, grant leave, and address the issue presented. See *Wardell v Hincka*, 297 Mich App 127, 133 n 1; 822 NW2d 278 (2021).

lease agreement stated that plaintiff had the right to accelerate all rent payments, making them immediately due and payable, in the event that plaintiff terminated the lease for any breach.

After the six-month rent-free period of the lease expired, defendants notified plaintiff that they were unable to pay the rent. Defendants did not pay rent in June 2021.[2] Ahmad testified at trial that he had planned to temporarily close the restaurant in order to travel to Lebanon during summer 2021 and to reopen the restaurant when he returned, and that he had informed plaintiff's real estate broker of his plans. Ahmad left for Lebanon in July 2021. Brian Marsh, a manager for plaintiff, testified that he checked on the property once a week, and that the building had looked empty in June and July 2021. Marsh also testified that a property manager employed by plaintiff had observed the property and had told Marsh that it was abandoned.[3] On July 14, 2021, plaintiff changed the locks on the building. The parties dispute whether defendants had appliances and other items in the building when plaintiff changed the locks. On July 22, 2021, plaintiff sent defendants a seven-day notice and demand for possession of the property based on nonpayment of rent.

Subsequently, plaintiff filed an action against Andalus in district court for possession of the property, and the parties eventually agreed to a consent judgment granting possession to plaintiff. Although the judgment, which was entered on August 31, 2021, stated the amount of rent then due, the judgment was limited to possession and did not award monetary damages.[4] The judgment expressly reserved for the trial court the amount of accelerated rent that defendants owed plaintiff.

Plaintiff then filed a complaint in the trial court containing one count for breach of contract against Andalus and one count for breach of personal guarantee against Ahmad. The trial court held a two-day bench trial in December 2022. After the close of proofs, the trial court made the following findings: Ahmad traveled to Lebanon in July 2021 and his intention was to return in roughly 60 days. Marsh did not observe any activity on the property in July 2021. Plaintiff had incurred $15,000 in attorney fees as a result of defendants' breach. Plaintiff leased the property to a new tenant on December 9, 2021, and demanded a total of $18,000 for lost rent in the months of September, October, and November 2021. Plaintiff and defendants had two real estate brokers who worked on behalf of the parties and charged fees for their services. Plaintiff had paid all of the brokerage fees for both brokers.

---

[2] According to defendants, the first rent payment was due in June 2021.

[3] The property manager did not testify at trial. When the trial court inquired as to why the property manager was not subpoenaed, counsel for plaintiff stated that "our opinion continues to be that all of this is barred" by defendants' failure to assert an anti-lockout defense in their list of affirmative defenses, as we will discuss further in Part II of this opinion.

[4] The order provided that plaintiff could "apply for an order evicting the defendant if the defendant does not pay the plaintiff or the court the amount due in item 2d above or does not move out on or before 9-10-21."

Defendants' list of affirmative defenses had not included an anti-lockout defense. Accordingly, the trial court held that had defendants waived that defense. The trial court further held that defendants owed plaintiff $58,716 for broker fees,[5] $15,100 in unpaid rent as reflected in the consent judgment,[6] $15,000 for attorney fees, and $54,000 in unpaid rent for three months during which the property was vacant after plaintiff retook possession (expressly excluding the month of August 2021 when the action for possession was pending in the district court).[7] The trial court summarized that it was awarding a total judgment in the amount of $142,878. Although a visiting judge, Judge Antonio P. Viviano, presided over the bench trial, the judge originally assigned to the case, Judge Kathryn Viviano, entered the judgment, which ordered Ahmad to pay plaintiff $142,878 (plus taxable costs and statutory judgment interest).

Defendants moved for reconsideration, arguing that the trial court had erred by (1) failing to give them an opportunity to amend their list of affirmative defenses, (2) awarding plaintiff excessive damages when there was insufficient evidence to support the award, and (3) awarding plaintiff damages in excess of the district-court consent judgment. Finally, defendants noted that, although a visiting judge was the trier of fact in this case, the original judge signed the judgment. The trial court denied the motion. Defendants subsequently filed a motion for a new trial, which was denied by the trial court as both untimely and unpersuasive. This appeal followed.

## II. OPPORTUNITY TO AMEND AFFIRMATIVE DEFENSES

Defendants argue that the trial court erred by finding that defendants had waived an anti-lockout defense and by failing to give defendants an opportunity to amend their list of affirmative defenses. We disagree. "A trial court's decision concerning a motion to amend pleadings is reviewed for an abuse of discretion." *Forton v St Clair Co Pub Guardian*, 339 Mich App 73, 82; 981 NW2d 103 (2021). "The trial court's findings of fact are reviewed for clear error." *Berry v Mackey*, 327 Mich App 711, 717; 935 NW2d 94 (2019). A finding is clearly erroneous if some evidence supports a finding, but a review of the entire record leaves the reviewing court with the definite and firm conviction that a mistake was made. *In re Conley*, 216 Mich App 41, 42; 549 NW2d 353 (1996).

Defendants argued before the trial court that they had effectively included an anti-lockout defense in their original list of affirmative defenses by stating that "Plaintiff's claims are barred, in whole or in part, because some or all of the damages and relief sought are not recoverable under applicable law." However, this vague reference to some unidentified law or body of law was insufficient to give plaintiff notice that defendants were raising an anti-lockout defense or a reasonable opportunity to respond to such a defense. See *Glasker-Davis v Auvenshine*, 333 Mich

---

[5] This was comprised of three invoices in the amounts of $22,392, $23,220, and $13,104.

[6] The consent judgment more precisely reflected a total amount then due of $15,162.

[7] The trial court, although referring to the months of August, September, and October 2021, later clarified that it was not awarding rent from July 14, 2021 to August 31, 2021 (when the consent judgment entered), so it presumably awarded rent for the months of September, October, and November 2021.

App 222, 232; 964 NW2d 809 (2020) (explaining that an affirmative defense that does not provide the opposing party with a meaningful opportunity to respond fails to comply with the notice-pleading requirement). Therefore, the trial court did not clearly err when it found that defendants did not originally raise an anti-lockout defense in their list of affirmative defenses, and had therefore waived that defense. *Berry*, 327 Mich App at 717.

A party that fails to set forth a particular defense in the first responsive pleading can move to amend its list of affirmative defenses to add a defense. *Southeast Mich Surgical Hosp, LLC v Allstate Ins Co*, 316 Mich App 657, 663; 892 NW2d 434 (2016), remanded in part on other grounds 503 Mich 1004 (2019). A party may move to amend its affirmative defenses at any time. *Glasker-Davis*, 333 Mich App at 230. MCR 2.118(A) provides, in relevant part:

> (1) A party may amend a pleading once as a matter of course within 14 days after being served with a responsive pleading by an adverse party, or within 14 days after serving the pleading if it does not require a responsive pleading.

> (2) Except as provided in subrule (A)(1), a party may amend a pleading only by leave of the court or by written consent of the adverse party . . . .

MCR 2.111(F)(3) provides that "[a]ffirmative defenses must be stated in a party's responsive pleading, either as originally filed or as amended in accordance with MCR 2.118." "A defense not asserted in the responsive pleading or by motion as provided by these rules is waived." MCR 2.111(F)(2).

A motion for leave to amend may be written or made orally at trial. MCR 2.119(A)(1)(a). In this case, defendants never filed a written motion to amend their affirmative defenses. At trial, defense counsel made statements about amending defendants' affirmative defenses. For example, during defendants' opening statement, defense counsel explained that an amendment to add an anti-lockout defense to defendants' affirmative defenses would not prejudice plaintiff because the lockout issue was discussed throughout the case. Defense counsel then stated, "We believe that the amendment can be—should be granted to add the lockout provisions of the state law." And in closing argument, defense counsel stated that, "We are looking to amend that to specify the law, which was the Antilockout Statute in Michigan. And I would ask the Court to consider that in its opinion. And we will gladly amend accordingly afterwards." Defense counsel never explicitly asked the trial court for leave to amend defendants' list of affirmative defenses, or otherwise clearly communicated to the trial court that a motion to amend was before it.

Although it could be argued that defendants had effectively made an oral motion to amend, we are not left with the definite and firm conclusion that a mistake was made when the trial court found that defendants had never moved to amend their affirmative defenses. *Conley*, 216 Mich App at 42. At trial, defense counsel never clearly stated that he was moving to amend the list of affirmative defenses. Rather, defense counsel stated that "the amendment can be—should be granted" and that defendants were "looking to amend" the list of affirmative defenses. Moreover, defense counsel made these comments in his opening statement and closing argument; these statements could easily be viewed as expressing an intent to seek amendment of the affirmative defenses at some later point. On review of the entire record, we conclude that the trial court did not clearly err when it found that defense counsel had not moved to amend defendants' list of

-4-

affirmative defenses. *Id*. Accordingly, because defendants never moved for leave to amend, the trial court could not have abused its discretion by failing to grant leave to amend. See *Glasker-Davis*, 333 Mich App at 230 (explaining that a party must move to amend a pleading).

Further, even if defense counsel had successfully made an oral motion to amend defendants' list of affirmative defenses, the trial court did not abuse its discretion by failing to grant defendants leave to amend, because granting leave would have prejudiced plaintiff. Leave to amend "should be granted freely unless doing so would prejudice the other party." *Id*. In this context, prejudice "means the opposing party would suffer an inability to respond that the party would not otherwise have suffered if the affirmative defense had been validly raised earlier." *Id*. at 231.

As stated, defendants never moved to amend their list of affirmative defenses during the entire pretrial proceedings. Even if defense counsel's statements at trial were taken as a motion to amend, if the trial court had permitted defendants to amend their list of affirmative defenses at trial, plaintiff would have been prejudiced by the surprise of the late-added defense. While the issue of an anti-lockout defense was periodically discussed throughout the litigation, plaintiff never addressed the merits of the defense because it consistently relied on the fact that defendants had not amended their list of affirmative defenses to add that defense. Given that plaintiff had no reason to address the merits of an anti-lockout defense before trial, plaintiff would likely have been prejudiced by suddenly having to argue the merits of an anti-lockout defense at trial. Had defendants amended their list of affirmative defenses before trial, plaintiff would have had a chance to prepare a substantive response to the defense before trial. See *Glasker-Davis*, 333 Mich App at 230 (explaining that prejudice "means the opposing party would suffer an inability to respond that the party would not otherwise have suffered if the affirmative defense had been validly raised earlier.").

Relatedly, because discovery ended before defendants ever sought to amend their list of affirmative defenses, plaintiff's opportunity to make discovery requests for material related to an anti-lockout defense would have ended before the amendment. An amendment at trial would have likely prejudiced plaintiff by effectively barring it from accessing all of the information relevant to rebutting an anti-lockout defense. In sum, we conclude that the trial court did not err by holding that defendants had waived an anti-lockout defense and were not entitled to amend their pleadings to add such a defense.

## III. EXCESSIVE DAMAGES

Defendants also argue that the trial court erred by awarding plaintiff excessive damages when there was insufficient evidence to support the award. We agree that the trial court clearly erred by awarding plaintiff $54,000 for three months' lost rent, but conclude that the trial court did not err regarding the remainder of the amount of damages awarded.

This Court reviews de novo issues of contract interpretation, including the interpretation of lease agreements and consent judgments. *Patel v FisherBroyles, LLP*, 344 Mich App 264, 271; 1 NW3d 308 (2022); *Brendel v Morris*, 345 Mich App 138, 146; 4 NW3d 776 (2023). "The words of a contract are interpreted according to their plain and ordinary meaning, and this Court gives effect to every word, phrase, and clause while avoiding interpretations that would render any part

of the document surplusage or nugatory." *Id*. at 272 (quotation marks and citation omitted). We review for clear error a trial court's findings of fact. *Berry*, 327 Mich App at 717. "The words of a contract are interpreted according to their plain and ordinary meaning, and this Court gives effect to every word, phrase, and clause while avoiding interpretations that would render any part of the document surplusage or nugatory." *Patel*, 344 Mich App at 272 (quotation marks and citation omitted).

''The party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach." *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 550; 904 NW2d 192 (2017) (quotation marks and citation omitted).

In this case, the trial court found that defendants owed plaintiff $58,716 in brokerage fees. This finding was not clearly excessive given the broker invoices admitted at trial and Marsh's testimony that plaintiff paid a total of $81,916 in brokerage fees.[8] The lease agreement specified that defendants would be liable for any brokerage fees resulting from their default. Defendants conceded that they had defaulted on their rent payments and that brokerage fees resulted from the default. Consequently, there was sufficient evidence supporting this part of the judgment award. *Van Buren Charter Twp*, 319 Mich App at 550.

There was also sufficient evidence supporting the trial court's finding that defendants owed plaintiff $15,000 in attorney fees. The lease specified that defendants would be responsible for paying plaintiff's attorney fees in the event defendants defaulted on the lease. Marsh testified that plaintiff paid $15,000 in attorney fees as a result of defendants' default and defendants did not object to that testimony. Therefore, Marsh's uncontested testimony supported the trial court's award of $15,000 in attorney fees. *Id*. Finally, the consent judgment supported the trial court's award of $15,162 in past rent,[9] as it specified that amount as then owing. *Id*.

However, the trial court's finding that defendants owed plaintiff $54,000 in lost rent for the three months between the entry of the consent judgment and the commencement of a new tenant's rental payments was clearly erroneous. The lease agreement required defendants to pay $5,000 a month in rent for September and October 2021, and $6,000 in rent for November 2021. Therefore, the amount of lost rent for those three months was $16,000. In its trial brief and at trial, plaintiff alleged that defendants owed $18,000 in rent for those three months.[10] While it is unclear why plaintiff alleged that defendants owed $2,000 more than the rent schedule indicated defendants owed, plaintiff's claimed amount was far lower than what the trial court ultimately

---

[8] It is unclear why the trial court appears to have omitted one of the four broker invoices in computing the amount of damages for brokerage fees.

[9] As noted, the trial court orally used the figure $15,100, but its total judgment amount of $142,878 includes the actual consent judgment amount of $15,162.

[10] Although the basis for the trial court's award of $54,000 in lost rent is unclear, we presume that it awarded $18,000 (the amount plaintiff requested for three months) for *each* of those three months.

awarded in lost rent. The trial court clearly erred by awarding plaintiff $54,000 in lost rent. *Berry*, 327 Mich App at 717.

Defendants also argue that the trial court erred by awarding plaintiff damages beyond those recited in the consent judgment. We disagree.

"A party *may* join a claim for damages in a summary eviction proceeding up to the district court's jurisdictional limits, but it is not required to do so." *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 527; 773 NW2d 57 (2009). However, even where a claim for damages is not joined in a summary eviction proceeding, "a summary eviction judgment must state the amount of past-due rent that, if timely paid, will allow a defendant to remain in possession of the premises." *Id*. "The amount of past-due rent is not a judgment for damages." *Id;* see also MCL 600.5750.

In this case, the consent judgment was not a money judgment, but instead identified that plaintiff was owed $15,162 for past-due rent and associated costs. The consent judgment expressly stated that defendants could be liable for money damages if additional rent was due and that no money judgment was being entered. The consent judgment reserved for the trial court the issue of "current rent owed above accelerated rent." Therefore, by its plain terms, the consent judgment was only a judgment regarding possession and was not a money judgment. Defense counsel conceded at trial that the district court case only concerned the issue of possession and reserved for the trial court the issue of damages. Plaintiff's action for damages was not precluded or limited by the prior consent judgment in the district court. See *1300 LaFayette*, 284 Mich App at 527.

## IV. JUDICIAL SUBSTITUTION

Defendants also argue that the trial court erred when a visiting judge tried the case, but the judge to whom the case was originally assigned signed the judgment after trial. Defendants argue that the trial court erred, in denying their motion for reconsideration. by concluding that defendants had abandonment the issue. We disagree. "This Court reviews for an abuse of discretion decisions regarding motions for reconsideration, which occurs when the trial court chooses an outcome outside the range of principled outcomes." *Zalewski v Zalewski*, 342 Mich App 429, 433; 995 NW2d 553 (2022) (quotation marks and citation omitted).

An issue is preserved for appellate review if it is raised in the trial court. *Glasker-Davis*, 333 Mich App at 227. In their motion for reconsideration, defendants only made the following statement concerning the issue of judge substitution:

> Finally, it appears that although Judge Antonio P. Viviano was the visiting Judge and tried the matter, the signature of the Judgment was that of Judge Kathryn P. Viviano, whom the case is assigned to, but was not the trier of fact or law in this matter.

The trial court held that defendants had abandoned any claim of error regarding this issue because they made no claim of error in their motion and provided no legal authority in support of their position. We agree.

Defendants made no argument or allegation of error regarding the substitution. Instead, defendants merely highlighted that a substitution had occurred. Because defendants failed to allege than an error occurred or cite any legal authority indicating the substitution was erroneous, the trial court did not abuse its discretion when it concluded that defendants had abandoned the issue in their motion for reconsideration. See *Bill*, 312 Mich App at 695 (explaining that, when "a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned.") (quotation marks and citation omitted).

Defendants first raised substantive arguments about the substitution of judges in their motion for a new trial filed after they had filed their claim of appeal. The trial court denied that motion as untimely; that denial is not properly before this Court, as the order denying defendants' motion was entered after defendants filed their claim of appeal and defendants did not seek leave to appeal that order or amend this appeal to include it. See MCR 7.203(A)(1), MCR 7.204(A)(1)(d), MCR 7.204(H)(2). Accordingly, we will not consider the arguments raised for the first time in that motion.

We reverse the judgment of the trial court to the extent that it awarded plaintiff $54,000 for lost rent for the months of September, October, and November 2021, but affirm the judgment in all other respects. We remand for further proceedings consistent with this opinion and for amendment of the judgment to reflect the proper amount of lost rent. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Kirsten Frank Kelly
/s/ Adrienne N. Young